**Norma J. HEINS, Plaintiff–Appellant,**

**v.**

**Donna E. SHALALA, Secretary of Health and Human Services, Defendant–Appellee.**

**No. 93–3348.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 16, 1994.

Decided April 18, 1994.

Steven J. Plotkin, Chicago, IL (argued), for plaintiff-appellant.

Barbara F. Altman (argued), Dept. of Health and Human Services, Region V, Office of the General Counsel, James G. Hoffnagle, Office of the U.S. Atty., Chicago, IL, for defendant-appellee.

Before EASTERBROOK and MANION, Circuit Judges, and McDADE, District Judge.*

· MANION, Circuit Judge.

Norma Jean Heins ("Norma Jean") brought suit in the district court pursuant to 42 U.S.C. § 405(g), seeking review of the Secretary of Health and Human Service's ("the Secretary") final decision that she was overpaid widow's benefits from January 1986 through January 1991 and that recovery of the overpayment should not be waived. The district court granted summary judgment in favor of the Secretary, concluding that the Secretary had properly reopened her earlier determination that Norma Jean was entitled to widow's benefits and that sufficient evidence supported the Secretary's decision that Norma Jean was overpaid widow's benefits and that repayment of those benefits should not be waived. We affirm.

## I. Statutory Background

Before we consider the facts of this case, an overview of the Social Security Act and the entitlement to widow's benefits under the Act is helpful. Under Title II of the Act, the widow of a man who dies fully insured is generally entitled to widow's benefits on her deceased husband's account if (1) she is not remarried; (2) has attained age 60 (unless she is under a disability); and (3) has filed an application for widow's benefits. 42 U.S.C. § 402(e)(1). The Social Security Administration's ("SSA") determination that a woman is entitled to widow's benefits is a final decision subject to res judicata. 20 C.F.R. §§ 404.902, 404.905 (1992); *Dugan v. Sullivan,* 957 F.2d 1384, 1387–88 (7th Cir.1992). The SSA, however, may reopen such a determination "[a]t any time if ... [i]t was obtained by fraud or similar fault...." 20 C.F.R. § 404.988 (1993).

Fraud exists when a person either:

a. Makes or causes to be made with intent to defraud, a false statement or misrepresentation of a material fact for use in determining rights to Social Security benefits; or

b. With intent to defraud, conceals or fails to disclose a material fact for use in determining rights to Social Security benefits.

POMS § GN 04020.010 A.1.

Similar fault exists when a person either:

a. Knowingly makes an incorrect or incomplete statement that is material to the determination; or

b. Knowingly conceals information that is material to the determination.

POMS § GN 04020.010.A.2. However, fraudulent intent is not required. POMS § GN 04020.010.A.2.b. *Accord* SSR 85–23.

If "fraud or similar fault" exists, the Secretary may reopen the initial decision awarding benefits and determine anew if the applicant was entitled to benefits. If the Secretary determines that the SSA erroneously paid benefits, the Secretary is to recover, by offset or refund, any benefits erroneously paid. 42 U.S.C. § 404(a)(1).

The Secretary, however, can waive repayment if the recipient "is without fault, and ... recovery would either (1) [d]efeat the purpose of title II of the Act, or (2) [b]e against equity and good conscience." 20 C.F.R. § 404.506 (1993); 42 U.C.C. § 404(b). Regulations define fault for purposes of section 404(b) as an overpayment caused by:

(a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or

(b) Failure to furnish information which he knew or should have known to be material; . . . .

20 C.F.R. § 404.507 (1993). In determining "whether any individual is without fault, the Secretary shall specifically take into account any physical, mental, educational, or linguistic limitation such individual may have. . . ." 42 U.S.C. § 404(b). '

The final decision of the Secretary regarding entitlement to benefits, including the reopening of such decisions, and the denial of requests for waiver of repayment must be affirmed if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938).

Against this background, we consider Norma Jean's case.

## II. Factual Background

Norma Jean was born Norma Jean Black on February 12, 1924. In 1947 she married Ray Heins and took the name Norma Jean Heins. Ray Heins died on December 5, 1978. After Ray Heins' death, Norma Jean contacted the SSA inquiring about her eligibility for widow's benefits. The SSA informed Norma Jean, who was then 54, that she would not be entitled to widow's benefits until she was 62 years old.[1] In 1981 Norma Jean married Robert Roberts. This remarriage disqualified Norma Jean from receiving widow's benefits. 42 U.S.C. § 402(e)(1). Norma Jean claims, however, that she did not know that remarriage affected her right to widow's benefits. Accordingly, when Norma Jean turned 62 in 1986, she again contacted the SSA and on February 17, 1986 she visited the SSA office to file an application for widow's benefits on her late husband's, Raymond Heins', account. Norma Jean was accompanied by her friend Denise Gedenk.

At the office, an SSA clerk asked Norma Jean various questions, writing her replies on the widow's benefits application form. In answering the questions, Norma Jean gave the names Norma Jean Heins and Norma Jean Black, but she did not make any reference to the name Roberts even though she used the names Jean Heins Roberts and Norma Jean Roberts for various other purposes. Norma Jean also only gave information concerning her marriage to Raymond Heins; she did not, however, mention her marriage to Robert Roberts. Accordingly, the clerk listed "none other" under the application section entitled "information about each of your marriages." Norma Jean claims that the SSA clerk never asked her if she had remarried.

When the SSA clerk finished filling out the application, Norma Jean signed and dated the application. Immediately above the signature line the following statement appears in bold print:

> I know that anyone who makes or causes to be made a false statement or representation of material fact in an application or for use in determining a right to payment under the Social Security Act commits a crime punishable under Federal law by fine, imprisonment or both. I affirm that all information I have given in this document is true.

The application also included the following statement:

> Remarriage prior to age 60 may terminate your benefits. There are certain exceptions which are explained in the informational booklet which you will receive. You must report if you remarry even if you believe an exception applies. We will advise you whether additional evidence is needed and how your benefits may be affected.
>
> I AGREE TO PROMPTLY NOTIFY the Social Security Administration if I REMARRY and to PROMPTLY RETURN ANY BENEFIT CHECK I receive for the month I marry, and for any later month.

---

1. Under the Social Security Act, eligibility for widow's benefits actually begins at age 60 (absent a disability). 42 U.S.C. § 402(e)(1)(B)(i).

Based on Norma Jean's application, the SSA began paying Norma Jean widow's benefits, retroactively to January 31, 1986.

In October or November of 1990 Norma Jean's second husband, Roberts, also applied for Social Security benefits. In his application, Roberts listed Norma Jean as his wife. In processing Roberts' application, the Social Security office realized that Norma Jean was already receiving widow's benefits. Concerned about the possibility of fraud, an SSA employee contacted Norma Jean, asking her questions about her marital history. Norma Jean verified her marriage to both Heins and Roberts and also supplied the SSA office with her and Robert Roberts' marriage certificate.

Upon verifying that Norma Jean was remarried at the time she applied for widow's benefits, the SSA reopened its award of widow's benefits and determined that it had overpaid Norma Jean widow's benefits from January 1986 to January 1991. The SSA then notified Norma Jean on February 12, 1991 that it was terminating her widow's benefits retroactively, effective January 1986, and that the payments from January 1986 to January 1991 constituted overpayments subject to recovery. Norma Jean notified the SSA that she intended to appeal the termination of her widow's benefits. She also submitted an application for waiver of the overpayment.

In a Reconsideration Determination, the SSA affirmed that Norma Jean was not entitled to widow's benefits, that the award of widow's benefits was properly reopened, and that her widow's benefits were correctly terminated. The SSA also decided not to waive repayment. Norma Jean then requested a hearing before an administrative law judge ("ALJ").

Before the ALJ, Norma Jean testified that she did not know that remarriage disqualified her from receiving widow's benefits. Norma Jean and Denise Gedenk also testified that they did not recall the SSA clerk asking whether Norma Jean had remarried. Norma Jean further claimed not to recall whether or not she reviewed the application before she signed it, but absolutely denied intentionally concealing her remarriage to

Robert Roberts. The ALJ found that the award of widow's benefits was properly reopened because Norma Jean had "procured benefits based upon 'fraud or similar fault.'" The ALJ also found that Norma Jean had been overpaid widow's benefits from January 1986 to January 1991 and in receiving the overpayment Norma Jean was not "without fault." The ALJ also denied Norma Jean's request to waive repayment.

Following the decision of the ALJ, Norma Jean requested review of the ALJ's decision by the Appeals Council. The Appeals Council, however, denied her request and the ALJ's decision then became the final decision of the Secretary. Norma Jean then brought suit in the district court pursuant to 42 U.S.C. § 405(g), seeking review of the Secretary's final decision. The district court granted summary judgment in favor of the Secretary, concluding that the Secretary properly reopened her earlier determination that Norma Jean was entitled to widow's benefits and that sufficient evidence supported the Secretary's decision that Norma Jean was overpaid widow's benefits and that repayment of those benefits should not be waived.

## III. Analysis

### A. Reopening

■ Norma Jean first contests the Secretary's decision to reopen her prior decision that she was entitled to widow's benefits. In this case, the Secretary reopened the award of widow's benefits only after learning that Norma Jean had remarried Robert Roberts. The Secretary may reopen her decision awarding widow's benefits if the benefits were obtained by "fraud or similar fault." 20 C.F.R. § 404.988. On appeal, the Secretary does not assert that "fraud" existed; rather the Secretary bases her position on "similar fault." Similar fault exists when a person either: (1) knowingly makes an incorrect or incomplete statement that is material to the determination; or (2) knowingly conceals information that is material to the determination. However, fraudulent intent is not required. POMS § GN 04020.010.A.2.b. *Accord* SSR 85–23.

The Secretary determined that "fraud or similar fault" existed. We review the Secretary's determination only to determine whether it is supported by substantial evidence. We conclude that substantial evidence supports the Secretary's decision. Specifically, Norma Jean admitted to an SSA employee that she had remarried Robert Roberts and even provided the SSA a copy of the marriage certificate. This directly contradicted the application that Norma Jean submitted for widow's benefits which listed "none other" in response to questions concerning other marriages. Norma Jean signed the application verifying that the information on the application was correct. This was sufficient evidence from which the Secretary could have concluded that Norma Jean had "[k]nowingly [made] an incorrect or incomplete statement that is material to the determination...." and thus had obtained widow's benefits by "similar fault." Accordingly, the Secretary properly reopened and properly determined that Norma Jean was overpaid widow's benefits from January 1986 through January 1991.

■ In response Norma Jean asserts that the Secretary's investigation was insufficient and, therefore, her decision to reopen was supported only by "speculation or supposition." Norma Jean's argument is without merit. Once the Secretary learned that Norma Jean's verified application included false information concerning her marital status, no further investigation was necessary. Such evidence is not mere speculation and was sufficient evidence to support reopening.

■ Norma Jean also asserts that the omission of her remarriage did not constitute "similar fault" because she did not complete the application—an SSA employee did—and the SSA employee did not ask her if she had remarried. Norma Jean, however, signed the application verifying that the information on the application was correct. An individual who signs an application for Social Security benefits is responsible for the contents of that document. *Austin v. Shalala,* 994 F.2d 1170, 1174 (5th Cir.1993); *Chapman v. Bowen,* 810 F.2d 151, 152 (8th Cir.1986). Norma Jean is therefore responsible for the omission of her marriage to Robert Roberts and hence

is responsible for "[k]nowingly making an incorrect or incomplete statement."

■ Moreover, even if we were to accept Norma Jean's position that she is not responsible for the omission of the marriage because she did not fill out the application, the application contained another material incorrect statement—her affirmation. Norma Jean's signature was an affirmation "that all information I have given in this document is true." All of the information, however, was not true; the statement "none other" in response to questions concerning other marriages was incorrect. So Norma Jean either had "similar fault" for incorrectly stating that no other marriages existed or for incorrectly stating that the information on the document was true. Under either scenario the Secretary could reopen her award of widow's benefits.

■ Finally, Norma Jean claims that she did not know that remarriage disqualified her from widow's benefits. "Similar fault," however, does not require intent to defraud—that is the difference between "similar fault" and "fraud." POMS § GN 04020.-010.A.2.b. *Accord* SSR 85–23. Rather, for "similar fault" the applicant need only know that the information is incorrect. Norma Jean does not and cannot claim that she did not know of her marriage to Robert Roberts. Therefore, it is irrelevant that she did not know of the significance of her remarriage.

### B. Waiver of Repayment

■ The Secretary also determined that it could not waive repayment of the widow's benefits because Norma Jean was not "without fault." A party is not without fault if the overpayment occurred because an "individual made an incorrect statement that she knew or should have known was incorrect." 20 C.F.R. § 404.507(a) (1993). "[W]hen a claimant fails to read a benefits form and verify that the information thereon is correct, the claimant who signs the form may be held to be at fault if the information turns out to be incorrect. If the rule were otherwise, claimants could lie about the information and later claim they did not know that the form was incorrect." *Austin v. Shalala,* 994 F.2d at

1174. As stated above, Norma Jean signed and verified the information on her application. This information, however, was incorrect. This was sufficient evidence from which the Secretary could have concluded that Norma Jean was not "without fault" in obtaining the widow's benefits.[2] Because Norma Jean was not "without fault" the Secretary properly denied waiver of repayment.[3]

## IV. Conclusion

Sufficient evidence existed for the Secretary to determine that Norma Jean had "similar fault" and, therefore, the Secretary properly reopened her initial determination that Norma Jean was entitled to widow's benefits. Sufficient evidence also supported the Secretary's decision that Norma Jean had improperly received widow's benefits from January of 1986 to January of 1991 and that repayment should not be waived. For these and the foregoing reasons, we

AFFIRM.

---

**2.** Because Norma Jean was not "without fault" we need not consider the other requirements for waiver, namely whether recovery would defeat the purpose of the title or would be against equity and good conscience.

**3.** Norma Jean is currently eligible for widow's benefits because she divorced Robert Roberts. Therefore, her obligation to repay the Secretary is being satisfied out of these benefits.