54 F.3d 779
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Cynthia BONNER, Plaintiff-Appellant,
v.
Shirley S. CHATER,* Commissioner of Social
Security, Defendant-Appellee.
 No. 94-3471.
 United States Court of Appeals, Seventh Circuit.
 Argued April 14, 1995.
Decided May 9, 1995.
 
 Before ALDISERT, BAUER, and FLAUM, Circuit Judges.**
 
 ORDER
 
 1
 Cynthia Bonner applied for Social Security disability insurance benefits in September 1986. On June 11, 1987, Administrative Law Judge ("ALJ") Edward A. Bobrick issued a decision finding that Bonner had been disabled since June 10, 1986, due to a back impairment and therefore was entitled to disability insurance benefits. Bonner and her son began receiving monthly disability payments in August 1987, and the payments were retroactive to December 1986.
 
 
 2
 On September 12, 1988, the Appeals Council of the Social Security Administration ("SSA") reopened and remanded the case to the ALJ on the ground of new and material evidence of Bonner's work activity during the disability period. On April 7, 1989, ALJ Bobrick issued a new decision finding that Bonner had not been precluded from engaging in substantial gainful activity for any continuous twelve-month period and thus was not disabled under the Social Security Act. 42 U.S.C. Secs. 416(i), 423(d). Bonner did not timely appeal this decision, which therefore became binding on all parties. 20 C.F.R. Secs. 404.955, 422.210(a).
 
 
 3
 Bonner was informed by the SSA on May 29, 1989, that her benefits had been terminated and that she and her son had been overpaid over $19,000 in benefits from December 1986 through May 1989. Bonner returned the disability payment that she had received in May 1989 and requested a waiver of the remaining overpayment. A hearing was held before ALJ Thomas Ploss. On May 20, 1993, ALJ Ploss issued a decision finding that recovery of the overpayment could be waived because Bonner was without fault in causing the overpayment. The Appeals Council reviewed the ALJ's decision and reversed his judgment, finding that recovery of the $19,061.30 overpayment could not be waived because Bonner was not without fault in causing the overpayment.[1] The decision of the Appeals Council was the final decision of the Secretary of Health and Human Services. 20 C.F.R. Secs. 404.981, 422.210(a).
 
 
 4
 Bonner then filed this action in the district court seeking judicial review of the Secretary's decision. The district court granted the Secretary's motion for summary judgment and ordered Bonner to reimburse the SSA in the amount of $19,061.30. We affirm.
 
 
 5
 We review the Secretary's finding only to determine whether it is supported by substantial evidence. 42 U.S.C. Sec. 405(g) (1988).[2] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).
 
 
 6
 Section 404(b) of title 42 provides that the Secretary may not recover any overpayment of benefits from a person who is "without fault" if such recovery "would defeat the purpose of [the Social Security Act] or would be against equity and good conscience." The Secretary's regulations provide that a person is at fault if the incorrect payment to the person resulted from:
 
 
 7
 (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or (b) Failure to furnish information which he knew or should have known to be material; or (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.
 
 
 8
 20 C.F.R. Sec. 404.507. The SSA must consider "all pertinent circumstances" in making this determination, including the individual's age, intelligence, education, and physical and mental condition. Id.
 
 
 9
 The Appeals Council concluded that Bonner was at fault in causing the overpayment because she provided information which she knew or should have known to be incorrect. 20 C.F.R. Sec. 404.507(a). On April 2, 1987, Bonner completed a written request for a hearing before the ALJ. In her request, Bonner stated that she had worked "a couple of days" since January 26, 1987, as a substitute teacher for the Chicago Board of Education but "had to stop because my back began to hurt." Tr. at 89. The Chicago Board of Education subsequently submitted a report to the SSA, dated June 29, 1987, which stated that Bonner received earnings in 1986 and in 1987. The report stated that Bonner earned nothing in February 1987, $353.76 in March 1987, $442.20 in April 1987, and $1,420.46 in May 1987. Bonner informed the SSA on June 29, 1987, that she returned to work in March 1987. Bonner did not dispute the accuracy of the Chicago Board of Education's earnings report but claimed that all wages she received through January 1987 (approximately $1,700) were sick pay. Bonner also estimated that she earned approximately $800 as a substitute teacher in June 1987.
 
 
 10
 The district court found that Bonner made an affirmative misstatement of fact on April 2, 1987, by stating that she had only worked "a couple of days" since January 26, 1987. Bonner's statement, however, was substantially accurate when it was made. Bonner's earnings of $353.76 in March 1987 represent approximately six days of work, and her prior earnings were sick pay. Contrary to Bonner's position, however, this does not render the Secretary's decision unsupported by substantial evidence. Bonner also informed the ALJ that she had to stop working because her back "began to hurt." The Secretary could reasonably conclude from this statement that Bonner led the ALJ to believe that she would not be working in the near future. Yet Bonner continued working and earned significant wages in April, May, and June of 1987. Bonner did not inform the SSA of her work activity until June 29, 1987, almost three weeks after ALJ Bobrick issued his decision awarding Bonner disability benefits.[3] No overpayment would have occurred if Bonner had promptly informed the ALJ of her work activity.
 
 
 11
 Bonner's justifications for failing to promptly notify the ALJ of her work activity are unpersuasive. Bonner asserts that because she was unrepresented by counsel at the time she was unaware of her duty to report her work activity. This argument ignores the fact that when Bonner applied for disability insurance benefits in September 1986, she agreed to promptly notify the SSA if her medical condition improved so that she would be able to work, even though she had not yet returned to work; or if she went to work as an employee or a self-employed person. Tr. at 50. The application clearly informed her that these events "may affect [her] eligibility to disability benefits as provided in the Social Security Act, as amended." Id.; cf. Heins v. Shalala, 22 F.3d 157, 162 (7th Cir. 1994) ("[W]hen a claimant fails to read a benefits form and verify that the information thereon is correct, the claimant who signs the form may be held to be at fault if the information turns out to be incorrect.").
 
 
 12
 Bonner points out that ALJ Bobrick did not hold a hearing prior to his June 11 decision. Under the Secretary's regulations, however, the fact that the SSA may have been at fault in making the overpayment does not relieve Bonner from liability for repayment if she is not without fault. 20 C.F.R. Sec. 404.507. Finally, Bonner's reliance on the SSA's Program and Operations Manual System ("POMS") is misplaced. The POMS is for the internal use of SSA employees, has no legal force, and does not bind the SSA. Schweiker v. Hansen, 450 U.S. 785, 789 (1981) (per curiam).
 
 
 13
 Bonner also contends that she is without fault because she was misled by a notice she received from the SSA in November 1988. See 20 C.F.R. Sec. 404.510a (an individual who accepts an overpayment because of reliance on erroneous information from the SSA is without fault). This notice informed Bonner that her disability was continuing, and she would continue to receive benefits through the remaining three months of her trial work period. The notice did not inform Bonner that she had no duty to report her work activity. And the notice would not have been sent if Bonner had promptly informed ALJ Bobrick of her work activity in 1987, which Bonner knew could affect her eligibility for benefits. The notice therefore did not mislead Bonner into accepting any overpayment.
 
 
 14
 Because the Secretary's decision is supported by substantial evidence, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Shirley S. Chater is substituted for Donna E. Shalala pursuant to Federal Rule of Appellate Procedure 43(c)
 
 
 **
 The Honorable Ruggero J. Aldisert of the United States Court of Appeals for the Third Circuit is sitting by designation
 
 
 [1]
 Although the SSA waived recovery of the overpayment of benefits against Bonner's son, Bonner was held jointly liable for the overpayment of benefits to her son
 
 
 [2]
 Section 405(g) of title 42 was amended effective March 31, 1995, to reflect that the final decision of the Commissioner of Social Security, not the Secretary, is subject to judicial review. Pub. L. No. 103-296, Title I, Secs. 107(a)(1), (2), (4), 110(a), 108 Stat. 1477, 1478, 1490 (1994). Because these amendments were not in effect at the time of the administrative decision in this case, we refer to the prior version of 42 U.S.C. Sec. 405(g)
 
 
 [3]
 The parties dispute whether Bonner informed the SSA of her work activity simultaneous with or subsequent to the Chicago Board of Education's earnings report. In our view, the answer is irrelevant. It is undisputed that Bonner did not complete a work activity report with the SSA until June 29, 1987, eighteen days after the ALJ's decision