**Gary L. QUINLIVAN,
Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, Secretary of
Health and Human Services,
Defendant–Appellee.**

No. 90–35188.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 11, 1990.

Decided Oct. 9, 1990.

Robin Zukoski, Marcia L. Mitchell, Evergreen Legal Services, Seattle, Wash., for plaintiff-appellant.

Richard H. Wetmore, Asst. Regional Counsel, Dept. of Health & Human Services, Seattle, Wash., for defendant-appellee.

Before WRIGHT, SCHROEDER and NORRIS, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

This appeal raises a question of statutory interpretation involving the waiver of overpayments provisions of the Social Security Act. Gary Quinlivan appeals the district court's decision denying his request for waiver of an overpayment of disability benefits he received from the Social Security Administration (SSA). He argues that the Secretary's interpretation of a statutory phrase, "equity and good conscience," is unreasonably narrow and that denial of waiver is inconsistent with a proper interpretation of that phrase. We agree and reverse.

## BACKGROUND

Quinlivan was incarcerated from 1963 to 1985 for a felony conviction. He received Social Security Title II benefits while in prison after being diagnosed as schizophrenic.

The Social Security Act was amended in 1980 to prohibit payment of disability benefits to incarcerated felons.[1] Between 1980 and 1982, disability benefits continued to be paid to Quinlivan, resulting in a net overpayment of $4,601.40. He was unaware of the change in the law and was without fault in receiving overpayments.

In early 1982, Quinlivan became aware that there might be a problem with his payments after reading a booklet published by SSA. He immediately wrote a letter to SSA and informed it of the situation. The SSA then sent him a notice stating that he had been overpaid for two years and demanded repayment. He requested reconsideration and a waiver of the overpayment. Apparently this request was not processed and another notice was sent in 1984. Quinlivan again appealed. A personal conference with an SSA representative was held in 1984, but no decision was issued at that time.

Quinlivan was released from prison in 1985. He spent his accumulated savings, including the overpayment, on clothes, a used truck, and daily living expenses. In 1987, SSA rejected his request for reconsideration. He appealed this decision and waiver was again denied in 1988 by an Administrative Law Judge. The Appeals Council and federal district court also denied his waiver request.

At the time of the ALJ's decision, Quinlivan's sole source of income was $314 a month in state welfare benefits. His expenses exceeded that amount. He did not

---

1. *See* 42 U.S.C. § 402(x)(1) (1988).

receive disability benefits upon his release because, in 1983, a continuing disability review concluded that he was no longer disabled. He reapplied for disability benefits. In 1989, an ALJ determined that he was once again eligible for disability benefits because of a personality disorder, a history of schizophrenia, blindness in one eye, and low back pain. Currently, these benefits are his only source of income.

## DISCUSSION

■ This court reviews the Secretary's denial of a waiver request to determine if he applied the proper legal standard and to determine if the denial is supported by substantial evidence. *Harrison v. Heckler,* 746 F.2d 480, 481 (9th Cir.1984).

■ The Social Security Act provides for waiver of overpayments if (1) a claimant is without fault in receiving the payment and (2) requiring repayment would either defeat the purposes of Title II or would be against equity and good conscience. 42 U.S.C. § 404(b) (1988). It is undisputed that Quinlivan was without fault. We conclude that requiring repayment would be against equity and good conscience, and do not reach Quinlivan's argument that repayment would defeat the purposes of Title II.

■ The Social Security Act does not define the phrase "against equity and good conscience," but the Secretary has interpreted it in 20 C.F.R. § 404.509(a) (1990). This regulation limits waiver under the equity and good conscience standard to situations where the claimant changed his or her position for the worse, relinquished a valuable right, or lived in a separate household from the overpaid person at the time of overpayment and did not receive the overpayment. *Id.* Financial need is irrelevant to this determination. 20 C.F.R. § 404.509(b) (1990). Quinlivan argues that this interpretation is unreasonably narrow and asks that we adopt the interpretation given the statute by the Eighth Circuit in

*Groseclose v. Bowen,* 809 F.2d 502 (8th Cir.1987).

In *Groseclose,* the court concluded that the Secretary's interpretation in 20 C.F.R. § 404.509(a) impermissibly constricted the common, ordinary meaning of the language "against equity and good conscience." The court looked to the dictionary definitions of "equity" and "conscience," and found the phrase to be "language of unusual generality." *Id.* at 505 (quoting *Gilles v. Department of Human Resources Development,* 11 Cal.3d 313, 322, 113 Cal.Rptr. 374, 380, 521 P.2d 110, 116 (1974)). The court reasoned that such broad language requires the trier of fact to draw upon precepts of justice and morality, rather than the comparatively rigid and specific rules found in the regulation. *See also Rosofsky v. Schweiker,* 523 F.Supp. 1180, 1188 (E.D.N.Y.1981); *Marchese v. Secretary of Health and Human Serv's,* 690 F.Supp. 162, 164 (W.D.N.Y.1988).

■ When a statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's interpretation is based on a reasonable construction of the statute. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). Judicial deference is constrained, however, by our "obligation to honor the clear meaning of a statute, as revealed by its language, purpose, and history." *Southeastern Community College v. Davis,* 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979) (quoting *International Bh'd of Teamsters v. Daniel,* 439 U.S. 551, 566 n. 20, 99 S.Ct. 790, 800 n. 20, 58 L.Ed.2d 808 (1979)).

The legislative history of § 404(b), though sparse, demonstrates that Congress intended to broaden the availability of waiver. *See Groseclose,* 809 F.2d at 505–06.[2] We are not bound by the Secretary's

**2.** In addition to the legislative history summarized in *Groseclose,* there is evidence that Congress modeled the waiver provision after what "appears in the veterans' laws, and that is to make more equitable recovery by the Federal Government of incorrect payments to individuals." *Social Security: Hearings Relative to the Social Security Act Amendments of 1939 Before the House Ways and Means Comm.,* 76th Cong.,

interpretation where the regulation limiting the meaning of the phrase has no foundation in the statute or its legislative history. *See Livermore v. Heckler*, 743 F.2d 1396, 1405 (9th Cir.1984) (rejecting Secretary's similarly narrow interpretation of word "disregard" in Social Security Act).

We conclude that the meaning of the phrase, "against equity and good conscience," cannot be limited to the three narrow definitions set forth in the Secretary's regulation. Congress intended a broad concept of fairness to apply to waiver requests, one that reflects the ordinary meaning of the statutory language and takes into account the facts and circumstances of each case.

Denial of Quinlivan's waiver request is inconsistent with the equitable principles expressed in the statute and its history. Upon release from prison, Quinlivan had no material goods, no means of transportation, and no income. During the three years before the hearing on his waiver claim, he worked sporadically, holding only a few temporary jobs. The ALJ who determined that Quinlivan was disabled in 1989 found that his psychological impairments prevented him from performing work during the preceding 12 months. It appears likely his ability to work in 1985–87 was similarly affected.

The only way he could qualify for state general assistance benefits was to spend his savings to a minimal level.[3] By the time SSA made its initial decision on the waiver request in 1987, five years had elapsed since his first request for reconsideration. It is unfair to have expected Quinlivan to hold the funds for more than two years after his release, without any pros-

pect of steady income and with eligibility for general assistance dependent on his level of assets. Given this unusual set of circumstances, we conclude that requiring Quinlivan to repay the funds now would be against equity and good conscience as that phrase is commonly understood.

We emphasize that our interpretation of the equity and good conscience standard does not mean that whenever an individual is found to be without fault, it necessarily follows that waiver is appropriate. This approach would render superfluous the "without fault" provision, a threshold requirement of the statute. Instead, we believe courts must apply cautiously the equity and good conscience standard to the circumstances of each case.

Quinlivan's request for attorney's fees is denied. The Secretary's argument, although unsuccessful, had a reasonable basis in fact and law. Attorney's fees will not be awarded where the government's position was substantially justified. *See Foster v. Tourtellotte*, 704 F.2d 1109, 1111–12 (9th Cir.1983).

### CONCLUSION

The decision of the Secretary applied an improper legal standard and was not supported by substantial evidence. If the Secretary has withheld any money from Quinlivan's current disability benefits to recover the overpayment, we direct the Secretary to reimburse these funds.

REVERSED.

---

1st Sess. 2287 (1939) (testimony of Arthur J. Altmeyer, Chairman of Social Security Board).

It is interesting to compare the interpretation of the identical phrase, "against equity and good conscience," contained in the statute permitting waiver of overpayments of veterans' benefits, 38 U.S.C.A. § 3102 (West Supp.1989). The Veterans Administration takes the position that the equity and good conscience standard should be applied "when the facts and circumstances indicate a need for reasonableness and moderation in the exercise of the Government's rights." 38 C.F.R. § 1.965 (1989). It then lists a number of factors which might be considered in the analysis. *Id.*

**3.** Quinlivan argues that these expenditures resulted in "changing his position for the worse," thus qualifying him for waiver under the regulatory definition of equity and good conscience. This case does not appear to fit squarely within the regulatory language, however. The regulation requires that a person have "changed his or her position for the worse ... because of the overpayment itself." 20 C.F.R. § 404.509(a)(1) (1990). Quinlivan *knew* that the SSA sought recovery of the overpayment, and so arguably did not change his position for the worse "because of the overpayment itself."