**Azeal VILLATE, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

Civ. A. No. 92–1967 (JLG).

United States District Court, District of Columbia.

Aug. 9, 1994.

Michael R. Schuster, Washington, DC, for plaintiff.

Claire M. Whitaker, Asst. U.S. Atty., Washington, DC, for defendant.

## OPINION

JUNE L. GREEN, District Judge.

This action is brought under 42 U.S.C. § 405(g) to review a final decision of the Secretary of Health and Human Services denying Plaintiff's request for a waiver of recovery of an overpayment of insurance benefits made under Title II of the Social Security Act. For the reasons stated below, the Court reverses the Secretary's decision.

The Plaintiff, Azeal Villate, is an 84 year-old divorced widow who worked for the government for 30 years and who retired from her government position on disability. At the time she applied for Medicare and widow's benefits in February 1980, the Plaintiff was receiving workers' compensation for the injuries she sustained while on her government job. The Administrative Record ("R.") at 40, 96.

Although eligible for a pension in January 1972, Plaintiff did not apply to receive her government pension until October 1980. R. at 96. After receipt of her pension payments, her widow's benefits should have been reduced pursuant to 42 U.S.C. § 402(e)(7)(A). The Social Security Administration claims it overpaid the Plaintiff $64,782.70, and made a demand upon her for reimbursement on August 6, 1990.

The overpayment was the result of unclear information contained in Plaintiff's application for widow's benefits.

The Administrative Record reflects that the widow's benefits application was filled out by a social security worker. R. 19, 39. The Plaintiff signed the application directly beneath a paragraph which, in part, states in small bold print: "I affirm that all information I have given in this document is true." R. 53.

Question 25(a) of the application asks if the applicant is currently receiving a government pension. R. 51. The "no" box on Question 25(a) of Plaintiff's application is clearly marked with an "X" in response to this question. R. 51. Question 25(b) asks if the appli-

cant expects to receive a government pension. R. 51. Both the "yes" and "no" boxes adjacent to this question on Plaintiff's application are marked in different ways. R. 51. The "no" box is marked with an "X" and the Plaintiff's initials are written beside the box. R. 51. The "yes" box has a thick line through it and a large arrow pointing to the box with the word "initial" written in large print in front of the arrow. R. 51.

The application directs those applicants who respond "yes" to question 25(b) to go to question 25(c). R. 51. This question asks the claimant to enter the date when she expects to receive the government pension or to indicate "unknown". R. 51. Question 25(c) on the Plaintiff's application was left blank. R. 51.

The Plaintiff's widow benefits were not reduced during the months she also received her government pension, apparently as a consequence of the SSA's interpretation of the Plaintiff's application as indicating that the Plaintiff did not expect to receive a government pension.

At the time of her application for widow's benefits, the Plaintiff was receiving worker's compensation. R. 96. The Plaintiff was eligible to receive her government pension in January 1972, but elected to defer its payment until October 1980. R. 96.

The SSA first notified the Plaintiff in November 1987 that she had been overpaid and that she was responsible for repaying the overpayment. The Plaintiff then requested the SSA to waive recovery of the overpayment, which was initially denied by the SSA in October 1989. After a personal conference between the Plaintiff and an SSA representative, the denial of the waiver request was affirmed in June 1990.

Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). On May 30, 1991, an administrative hearing was held before ALJ Friedenberg. Plaintiff was present and represented at this hearing by a paralegal employed by the American Association of Retired Persons.

At the hearing, Plaintiff testified that she told a social security worker that she worked for the government for thirty years and that she had retired because of a work-related injury. R. 40. The Plaintiff also testified that she was aware of the pension offset, but believed that the offset had always been deducted from her widow's benefits. R. 40–41.

The Plaintiff's testimony and the comments by the examiners at the hearing taken as a whole suggest that the Plaintiff, the American Association of Retired Persons paralegal, and the ALJ believed that the Plaintiff was receiving her government pension at the time she filed the application. However, the record also shows that the ALJ was in possession of information indicating that Plaintiff did not begin receiving her government pension until eight months after filing her application. *See*, R. 98.

In a written decision, the ALJ found that the Plaintiff was receiving a government pension at the time of the application in February 1980. R. 19. However, it is undisputable that Plaintiff did not receive her pension until October 1980, eight months after the filing of the application. R. 96. The ALJ also found that the initials of the Plaintiff beside the "no" box on question 25(b) indicated that the Plaintiff did not anticipate receiving a government pension. R. 19. The ALJ drew this conclusion "particularly in view of the fact that the interviewer had originally checked "yes" but then the answer was changed to "no", and claimant specifically initialed this answer." R. 19. On these bases, the ALJ found that the Plaintiff was "not without fault" in connection with the overpayment because she provided incorrect information on her application. R. 19.

Plaintiff requested a review of the ALJ's decision by the Appeals Council. On June 24, 1992, the Appeals Council denied Plaintiff's request for review of the ALJ'S decision, making the ALJ's determination the final decision of the Secretary and thus reviewable by this Court.

### A. Scope of Review

■ Judicial review of a final decision of the Secretary is limited to a determination of whether the decision, based on the entire record, is supported by substantial evidence and whether correct legal standards have

been applied. 42 U.S.C. § 405(g). *See Richardson v. Perales,* 402 U.S. 389, 402, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." *Id.* at 401, 91 S.Ct. at 1427 (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). The Court may not "decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Secretary." *Fulwood v. Heckler,* 594 F.Supp. 540, 548 (D.D.C.1984) (quoting *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983).

The Court must give careful scrutiny to the entire record to determine if the ALJ "has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits." *Simms v. Sullivan,* 877 F.2d 1047, 1050 (D.C.Cir.1989) (citations omitted).

### B. Review of the Secretary's Decision

■ The Social Security Act provides for a mandatory waiver of overpayments of insurance benefits if (1) the claimant is without fault in receiving the payment and (2) requiring a repayment would defeat the purpose of Title II or would be against equity and good conscience. 42 U.S.C. § 404(b).

■ A showing of bad faith is not required to find an overpaid individual at fault. 20 C.F.R. § 404.507(a) (1992)[1]. Rather, an individual is at fault if the overpayment resulted from:

(a) an incorrect statement made by the individual which he knew or should have known to be incorrect; or

(b) failure to furnish information which he knew or should have known to be material; or

(c) with respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507 (1992). When determining fault, all pertinent conditions, including age, intelligence, education, and physical and mental condition must be considered. *Id.*

■ The Court finds that the ALJ in this case made several errors in applying the standards set out under the Social Security Act and accompanying regulations for determining the fault of a claimant, including a clearly erroneous finding of fact.

The ALJ, in his written decision, fails to explain the rejection of evidence that conflicts with his findings, particularly when "that rejection turns upon a determination of a witness' credibility." *Shirley v. Bowen,* 635 F.Supp. 132, 134 (D.D.C.1986) (citations omitted). First, with respect to question 25(b) regarding an applicant's expectation of receiving a government pension, the ALJ did not explain his rejection of the possibility that Plaintiff had indicated an affirmative response in answer to question 25(b) relating to her expectation of receiving a government pension. Specifically, the ALJ did not address the marking of an arrow labeled "initial" pointing to the "yes" box on question 25(b). This marking renders the intended response to question 25(b) unclear and thus conflicts with the finding that the Plaintiff's initials beside the "no" box indicate a negative response to the question. The Court finds that the ALJ's assumption that question 25(b) was originally checked "yes" and then changed to "no" has no basis in fact and cannot be reasonably gleaned by examining the application form. The markings on that form do not reflect the time sequence in which they were made.

Second, the ALJ does not explain his rejection of the Plaintiff's testimony. That testimony, including her statement that she told the social security worker that she had worked for the government for 30 years, strongly suggests that she did not provide an incorrect statement regarding her expectation of receiving a government pension.

Finally, the ALJ supported his decision with an erroneous finding of fact. The ALJ found that the Plaintiff was receiving her government pension at the time of the appli-

---

[1]. The Court notes that in this case, there is no evidence of bad faith on the part of the Plaintiff. The record shows that the Plaintiff only applied for the widow's benefits after going to the social security office to get a Medicare card and being told by a social security representative that she was also eligible to receive widow benefits. (R. 38)

cation despite the contrary response that she gave on the application. R. 19, 51. However, the written record confirms that the answer given by the Plaintiff to question 25(a) was actually correct. A document provided by the SSA explicitly states that the Plaintiff did not begin receiving her government pension until October 1980, well after the time at which Plaintiff filed the application for widow benefits. R. 96.

The reasons given by the ALJ in the written decision to support the determination that the plaintiff is "not without fault" are thus inadequate.

■ Nonetheless, the decision of the ALJ must be upheld by the Court if it is supported by substantial evidence. However, the Court does not find sufficient evidence to meet this standard.

The only evidence that further supports the ALJ's decision is the fact that question 25(c), which requests the date of any expected government pension, is left blank. Had the Plaintiff, as she claims she did, truthfully communicated her expectation of receiving a government pension, arguably she would have indicated the date of the expected pension in answer to 25(c). This evidence, however, by itself cannot be considered "substantial" when weighed opposite the evidence demonstrating that Plaintiff was without fault.

■ Courts ordinarily hold that a social security claimant's signature verifies that the information contained in the entire application is accurate, even if the application was completed by a social security representative. See *Heins v. Shalala,* 22 F.3d 157 (7th Cir. 1994); *Austin v. Shalala,* 994 F.2d 1170 (5th Cir.1993). To hold otherwise would create too great a chance for fraud in the social security claims process. However, the Court finds that the regulations mandate a departure from this general rule due to the unusual circumstances of this case. The regulations mandate that all the relevant conditions of the Plaintiff be considered when determining fault. 20 C.F.R. § 404.507.

The Plaintiff in this case told the social security worker that she worked for the government for 30 years. The social security

worker who filled out the application then failed to ensure that the responses on the application were consistent with this information. The social security employee did not follow the agency's procedures for completing applications, as set forth in the Program Operations Manual System ("POMS"). The POMS instructs social security employees to "Review the application to assure that all pertinent questions are answered and are clear and legible." (Plaintiff's Exhibit 1) The POMS also directs the employee to sign and date any corrections made on the application. (Plaintiff's Exhibit 2) Neither of these procedures was followed by the social security employee.

The fact that question 25(c) was left blank must be considered in light of these circumstances. At the time she filed the application, the Plaintiff was 71 years old and dependent upon a negligent social security worker to fill out her application correctly. The Court finds that this evidence is insufficient for a reasonable mind to conclude that the Plaintiff was "not without fault" in connection with the overpayments made prior to November 1, 1987.

This Court accordingly REVERSES the decision of the Secretary and finds that the Plaintiff is WITHOUT FAULT in connection with her initial overpayment.

**C. Payments Made After Notice of Offset Reduction**

On November 1, 1987, the SSA first notified the Plaintiff that her widow's benefits would be reduced and that she may have been overpaid because of her simultaneous receipt of widow's benefits and a government pension. R. 55–56. Even so, the Secretary failed to adjust properly the Plaintiff's widow benefits until August 1990. R. 89.

■ The Plaintiff argues that the November 1, 1987 letter did not provide her with any new information and only implied that the SSA may need to reduce her benefits.

The first paragraph of the November 1, 1987 letter states:

"We are writing to you because in 15 days we plan to reduce the amount of Social

Security benefits you receive as a divorced widow. This is because the amount of the government pension you get affects the amount of Social Security benefits we can pay you as a divorced widow. Also, if we should have reduced your benefits before now, you may be overpaid." R. 55.

The letter concludes: "If we do not hear from you in 15 days from the date of this letter, we will reduce your Social Security benefits. We'll send you another letter at that time." R. 56.

After receiving this letter and continuing to receive full widow's benefits, the Plaintiff did not contact any social security office to clarify the discrepancy. The Secretary failed to send the Plaintiff the promised follow-up letter and to reduce the Plaintiff's benefits until August 1990.

Under the social security regulations, a claimant is at fault if she accepts a payment which she either knew or could have been expected to know to be incorrect. 20 C.F.R. § 404.507.

The Court finds that Plaintiff could not have been expected to know that the payments she was receiving were incorrect based upon the information contained in the November letter. The November letter speaks in conditional terms. It does not provide any information upon which one who believes that the payments she is receiving are correct should assume or reason that they are necessarily incorrect.

■ The opposite is true with respect to a letter, dated August 1, 1988, sent to the Plaintiff by the SSA. That letter simply and clearly informs the Plaintiff "you are overpaid." R. 57. At this point, it is reasonable to conclude that the Plaintiff could have been expected to know that the payments she was receiving were incorrect. Thus, the Court finds that the Plaintiff was not without fault with respect to the overpayments made between August 1988 and December 1990.[2] The Plaintiff is accordingly liable for the repayment of the overpayments made during this time.

**D. Recovery would be Against Equity and Good Conscience**

■ Waiver of recovery of an overpayment is mandatory if (1) the Plaintiff is without fault *and* (2) if the repayment would defeat the purpose of the Social Security Act or would be against equity and good conscience. 42 U.S.C. § 404(b). Because the ALJ made the determination on the first prong of this waiver analysis that the Plaintiff was not "without fault", the ALJ did not address the second prong. The facts in the record, however, compel the conclusion that recovery of the overpayment would be "against equity and good conscience" and therefore it is unnecessary to remand the case to the Secretary for further proceedings.[3] *See Adams v. Secretary of Health and Human Services,* 653 F.Supp. 249, 253 (C.D.Ill.1986).

The meaning of the phrase "against equity and good conscience" is not defined in the Social Security Act. However, the Secretary has promulgated a regulation defining this phrase in 20 C.F.R. § 404.509(a). This regulation limits waiver of a recovery to circumstances where the claimant has changed his or her position for the worse, relinquished a valuable right, or lived in a separate household from the overpaid person at the time of overpayment and did not receive the overpayment. *See id.* None of these circumstances are applicable here.

The Plaintiff, while not referring to 20 C.F.R. 404.509(a), asserts that the Secretary's application of this standard is "too narrow" and that the standard of "equity and good conscience" should be applied to waive recovery of the overpayment in this case. Plaintiff's Motion for Judgment of Reversal at 16 n. 6.

Plaintiff cites *Quinlivan v. Sullivan,* 916 F.2d 524 (9th Cir.1990) in support of this argument. The *Quinlivan* court found, upon

---

2. The record reflects that the SSA withheld full benefits from the Plaintiff beginning in December 1990. *See* R. 89, 92.

3. Finding that recovery of a portion of the overpayments would be "against equity and good conscience" the Court does not examine whether or not recovery of the overpayment would "defeat the purpose of the Social Security Act."

consulting the legislative history of the phrase "equity and good conscience," that Congress intended "to broaden the availability of waiver." *Id.* at 526 (citing *Groseclose v. Bowen*, 809 F.2d 502, 505–06 (8th Cir.1987)). The *Quinlivan* court concluded that:

"[T]he meaning of the phrase, "equity and good conscience," cannot be limited to the three narrow definitions set forth in the Secretary's regulation. Congress intended a broad concept of fairness to apply to waiver requests, one that reflects the ordinary meaning of the statutory language and takes into account the facts and circumstances of each case."

*Id.* at 506. The *Quinlivan* court also found "evidence that Congress modeled the waiver provision after what 'appears in the veterans' laws, and that is to make more equitable recovery by the Federal Government of incorrect payments to individuals.'" *Quinlivan v. Sullivan, supra,* at 526, n. 2 citing *Social Security: Hearings Relative to the Social Security Act Amendments of 1939 Before the House Ways and means Comm.,* 76th Cong., 1st Sess. 2287 (1939) (testimony of Arthur J. Altmeyer, Chairman of Social Security Board).

The Eighth Circuit has also disregarded regulation 20 C.F.R. § 404.509(b) as an unreasonably narrow interpretation of the statutory mandate to grant waiver when required by "equity and good conscience." *See Groseclose v. Bowen,* 809 F.2d at 506; *See also Marchese v. Secretary of Health and Human Services,* 690 F.Supp. 162 (W.D.N.Y. 1988).

The Court recognizes the considerable deference owed by the courts to the administrating agency's interpretation of "equity and good conscience." *Chevron United States, Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). However, judicial deference is limited by our "obligation to honor the clear meaning of a statute, as revealed by its language, purpose, and history." *Southeastern Community College v. Davis,* 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979) (quoting *International Bh'd of Teamsters v. Daniel,* 439 U.S. 551, 566 n. 20, 99 S.Ct. 790, 800 n. 20, 58 L.Ed.2d 808 (1979)).

While the Secretary's regulations reflect no foundation either in the statute or in the legislative history, the legislative history of the statute indicates that it was the intent of Congress to broaden the availability of waivers. *See* H.R.Rep. No. 728, 76th Cong., 1st Sess. 19 (1939) ("Provision is made for making more equitable the recovery by the Federal Government of incorrect payments to individuals"); *see also Quinlivan,* 916 F.2d at 526–27 *and Groseclose,* 809 F.2d at 505–506 (with further citations to the legislative history). Finally, and most important, this Court agrees with the view expressed by the Eighth Circuit that the common and ordinary meaning of the words "equity" and "good conscience" is one of "unusual generality." *Groseclose, supra,* at 505, *quoting Gilles v. Department of Human Resources Development,* 11 Cal.3d 313, 322, 113 Cal.Rptr. 374, 521 P.2d 110 (1974).

Consequently, this Court agrees with the Eighth and Ninth Circuits that the Secretary's definition of "equity and good conscience" is inconsistent with the intent of Congress, as evidenced in the plain language of the statute and in the legislative history, to apply a "broad concept of fairness" to waiver requests. *Quinlivan, supra,* at 527.

The Court finds that denial of the Plaintiff's waiver request would be against equity and good conscience for the following reasons. First, the SSA has eliminated all of the Plaintiff's social security benefits in order to recoup the $64,782.70 overpayment. This action reduced the Plaintiff income to her civil service pension, which is approximately $1,000 a month. R. 101–107. This amount is insufficient to meet the ordinary and necessary living expenses of the Plaintiff.

The Plaintiff reports the ownership of a second home, which she inherited and is valued at $45,000. R. 107. The parties dispute the liquidity and true value of this asset. If one argues however that Plaintiff's financial assets exceed her current living expenses due to her ability to liquidate this asset, recovery of the overpayment should be waived in this case because of the existence

of the other compelling facts and circumstances.

At the time that Plaintiff filed the application for widow's benefits, the Plaintiff told the social security worker filling out her application that she had worked for the government for thirty years. The social security worker failed to ensure that the application was consistent with this critical information. Furthermore, the markings to the questions related to government pensions were permitted to remain unclear, inconsistent, and confusing. This was in direct violation of the procedural guidelines promulgated by the SSA requiring workers to ensure all answers are clear and legible and to initial and date all changes. Because she reported her eligibility to receive a government pension, the Plaintiff reasonably believed that the pension offset had been applied to her widow's benefits and had no knowledge of the overpayments.

In light of these circumstances, as well as the limited income available to the Plaintiff, the Court finds that it would be against equity and good conscience to require Plaintiff to repay that portion of the overpayment of which she had no knowledge and which was the result of negligence of the SSA.

In sum, the Court holds that a recovery of the overpayments made to the Plaintiff prior to August 1, 1988 would be against equity and good conscience and that the Plaintiff should be released from the obligation to reimburse these overpayments.

### E. Attorneys Fees

In the complaint, the Plaintiff requests the award of attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), and Rule 54(d) of the Federal Rules of Civil Procedure. Under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), a "prevailing" social security claimant may be awarded attorney fees if the position of the government is not substantially justified. *Fleming v. Bowen,* 637 F.Supp. 726, 729 (D.D.C.1986) (citations omitted). The Court will not consider this matter, however, until an application is filed in accordance with 42 U.S.C. § 2412(d)(1)(B).

## CONCLUSION

The decision of the Secretary is not supported by substantial evidence and is accordingly REVERSED. The Court finds, however, that the Plaintiff is not without fault in connection with the overpayments made after August 1, 1988. Therefore the Court directs the Secretary to reduce the Plaintiff's overpayment to the amount overpaid to her after August 1, 1988. The Secretary is directed to waive the recovery of overpayments made to the Plaintiff prior to August 1, 1988. If the Secretary has withheld any funds from the Plaintiff's benefits in excess of this amount, we direct the Secretary to reimburse these funds.