Alfred J. HARZEWSKI, Plaintiff,

v.

Shirley S. CHATER, Commissioner of Social Security, Defendant.

No. 95–CV–1003A.

United States District Court,
W.D. New York.

May 6, 1997.

Alfred J. Harzewski, Eden, NY, pro se.

Patrick H. Nemoyer, U.S. Atty., Buffalo, NY (Donald P. Simet, Asst. U.S. Atty., of counsel), for the Government.

## DECISION AND ORDER

ARCARA, District Judge.

On April 1, 1996, this case was referred to Magistrate Judge Carol E. Heckman, pursuant to 28 U.S.C. § 636(b)(1)(B), for report and recommendation on defendant's motion for judgment on the pleadings. Magistrate Judge Heckman filed a Report and Recommendation on November 22, 1996, denying defendant's motion and reversing the determination of the Commissioner of Social Security that plaintiff is not entitled to a waiver of recovery of overpayment of Supplemental Security Income ("SSI") benefits.

On December 10, 1996, defendant filed an objection to the Magistrate Judge's Report and Recommendation. Defendant objects to the Magistrate Judge's recommendation that plaintiff was not at fault in causing the overpayment. Defendant also contends that the Magistrate Judge erred in recommending that recovery of the overpayment be waived where the Administrative Law Judge ("ALJ") did not make a determination as to whether recovery of the overpayment from plaintiff would: (1) defeat the purpose of Title XVI; (2) be against equity and good conscience; or (3) impede efficient or effective administration of Title XVI.[1]

Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has made a *de novo* review of the Magistrate Judge's Report and Recommendation. The Court has also reviewed the submissions of each of the parties and heard oral argument on the matter. Upon *de novo* review, the Court adopts Magistrate Judge Heckman's proposed findings and recommendations for the reasons stated in the Report and Recommendation.

Additionally, contrary to defendant's contentions, remand to the ALJ for determination of whether recovery of overpayment would: (1) defeat the purpose of Title XVI; (2) be against equity and good conscience; or (3) impede efficient or effective administration of Title XVI, is not required. Although remand to the ALJ pursuant to 42 U.S.C. § 405(g), sentence four,[2] may be appropriate where the ALJ did not reach the issue, remand is not *required* where, as here, there is sufficient evidence in the record for the Court to make that determination. *See e.g. Donath v. Sullivan,* No. Civ. 88–461L, 1990 WL 299416 (W.D.N.Y. Oct.26, 1990); *Villate v. Sullivan,* 862 F.Supp. 514 (D.D.C.1994).

In this case, there is sufficient evidence to conclude that recovery of the overpayment from plaintiff would be against equity and good conscience. As noted *supra* note 1, 42 U.S.C. § 1383(b)(1)(B) provides that recovery of an overpayment of benefits will be waived where the individual who received such benefits is without fault in caus-

1. Section 1631(b)(1)(B) of the Social Security Act, and the regulations promulgated thereunder, provide that recovery of an overpayment of SSI benefits may be waived if: (a) the overpaid individual was without fault in connection with the overpayment; and (b) recovery of the overpayment would either (1) defeat the purpose of Title XVI, (2) be against equity and good conscience, or (3) impede efficient or effective administration of Title XVI due to the small amount involved. 42 U.S.C. § 1383(b)(1)(B); 20 C.F.R. § 416.550. Because the ALJ found that plaintiff was not without fault in causing the overpayment, the ALJ did not reach the issue of whether recovery of overpayment from plaintiff would either (1) defeat the purpose of Title XVI, (2) be against equity and good conscience, or (3) impede efficient or effective administration of Title XVI due to the small amount involved.

2. The fourth sentence of 42 U.S.C. § 405(g) provides that a court reviewing a final decision of the Commissioner of Social Security "shall have the power to enter ... a judgment affirming, modifying, or reversing the decision of the Commissioner ... *with or without remanding the cause for a rehearing.*" 42 U.S.C. § 405(g) (emphasis added). The Court also notes that sentence six of § 405(g) is inapplicable in the instant action because defendant has not made a motion for remand back to the ALJ.

ing the overpayment and recovery of the overpayment would be "against equity and good conscience." The phrase "against equity and good conscience" is not defined in Social Security Act ("Act"). The regulations interpreting the statute provide that recovery of an overpayment will be deemed to be "against equity and good conscience" where "an individual changed his or her position for the worse or relinquished a valuable right because of reliance upon . . . the incorrect payment itself." 20 C.F.R. 416.554. However, several courts, including the Western District of New York, have held that this regulatory interpretation of the phrase "against equity and good conscience" is too narrow and is inconsistent with the legislative history of the statute. *See e.g. Groseclose v. Bowen,* 809 F.2d 502 (8th Cir.1987); *Quinlivan v. Sullivan,* 916 F.2d 524 (9th Cir.1990); *Marchese v. Secretary of Health and Human Services,* 690 F.Supp. 162 (W.D.N.Y.1988). Rather, these courts have found that, in enacting the waiver of overpayment provisions of the Act, Congress intended the phrase "against equity and good conscience" to mean "a broad concept of fairness . . . one that reflects the ordinary meaning of the statutory language and takes into account the facts and circumstances of each case." *Quinlivan,* 916 F.2d at 527. The Court agrees that Congress intended the broader interpretation of the phrase "against equity and good conscience" to be used in determining whether recovery of overpayment should be waived.

Applying this broader interpretation, the Court finds that recovery of the overpayment from plaintiff would be against equity and good conscience. As Magistrate Judge noted in her Report and Recommendation, recovery of the overpayment from future SSI checks is impossible because Larry Harzewski, the claimant and plaintiff's brother, died in March 1995. Therefore, recovery of any overpayment would come directly from plaintiff's own personal funds. Since there is no evidence on the record that plaintiff ever

misused the SSI funds or derived any benefit therefrom,[3] it seems particularly inequitable to recover the overpayment from plaintiff where plaintiff was without fault in causing such overpayment.

Accordingly, the Court hereby: (1) adopts Magistrate Judge Heckman's Report and Recommendation for the reasons set forth therein; (2) grants plaintiff's motion for judgment on the pleadings; (3) denies defendant's motion for judgment on the pleadings; and (4) reverses the Commissioner's determination that plaintiff is not entitled to a waiver of recovery of the overpayment of SSI benefits. The Clerk of the Court is hereby ordered to enter judgment in favor of the plaintiff and to take all steps necessary to close this case, without remand, pursuant to 42 U.S.C. § 405(g), sentence four.

IT IS ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, Magistrate Judge.

This matter was referred to the undersigned by the Hon. Richard J. Arcara, to hear and report, in accordance with 28 U.S.C. § 636(b). Plaintiff, acting *pro se,* brought this action pursuant to 42 U.S.C. § 405(g) to seek review of the final decision of the Commissioner of Social Security (the "Commissioner") that, as the former representative payee for his disabled brother Larry Harzewski, plaintiff is responsible for overpayments of Supplemental Security Income ("SSI" or "Title XVI"[1]) benefits. Both parties have moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Plaintiff has also applied for appointment of counsel (Item 12).

For the following reasons, plaintiff's motion for judgment on the pleadings should be granted, and defendant's motion should be denied. Plaintiff's application for appointment of counsel is denied without prejudice.

---

**3.** In its letter denying plaintiff's request for review of the ALJ's decision, the Appeals Council assured plaintiff that "there has been no finding or determination that [plaintiff] misused payee funds."

**1.** Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*

## BACKGROUND

This case presents a graphic illustration of the difficulties of navigating the complex social security benefits rules, and the lack of communication within the Social Security Administration ("SSA") itself. Plaintiff is the brother and legal guardian of Larry Harzewski, a disabled adult by virtue of a mental impairment (T. 19).[2] Prior to December of 1990, Mrs. Charlotte Harzewski, plaintiff's and Larry's mother, was the representative payee for Larry's adult child's disability insurance (Title II [3]) benefits paid on his deceased father's account. See 42 U.S.C. § 402(d). Mrs. Harzewski died in December of 1990 (T. 49).

In approximately February of 1991, plaintiff notified the SSA of Mrs. Harzewski's death (T. 49, 132). In April of 1991, plaintiff was appointed representative payee for Larry's benefits (T. 120). Also in April of 1991, Larry became a resident at a group home run by the Cantalician Center for Learning, Inc. (T. 19, 126).[4]

By letter dated August 24, 1991, the SSA notified plaintiff that it had overpaid Larry's SSI benefits from May, 1991 through August, 1991, in the amount of $1,316.00 (T. 82–83). The notice stated that the overpayment occurred because Larry was paid SSI benefits for those months without figuring in the amount of his disability insurance benefit (T. 83). On a form dated October 25, 1991, plaintiff requested a waiver of overpayment (T. 107–14). This request was denied on March 25, 1992 (T. 88–90).

Subsequently, by letter dated September 14, 1992, the SSA notified plaintiff that it had overpaid Larry's SSI benefits from May, 1991 through May, 1992 in the amount of $6,159.16 [5] (T. 91–97). According to the notice, the overpayment had occurred "because of … Social Security Benefits under two numbers" (T. 91). On a form dated November 2, 1992, plaintiff requested a formal conference for reconsideration of this determination (T. 98). The record indicates that a conference took place on March 12, 1993 (T. 100) and that plaintiff was also interviewed at a branch office of the SSA on April 23, 1993 (T. 100, 119).

By letter dated May 23, 1993, plaintiff's request for reconsideration was denied (T. 100–102). The letter stated:

> You should have reported receiving two Social Security checks especially once you were aware that the second check was causing a Social [sic] Security Income overpayment. You were in our office on April 23, 1992 regarding SSA [Title II] and SSI [Title XVI] overpayments and you did not tell the SSI interviewer that you were receiving two SSA checks for your brother. Therefore the overpayment must be refunded.

> However we have also determined that since you are currently refunding the SSA overpayment at the rate of $100.00 a month we should not count that amount as income to Larry. We are already using that amount in calculating the SSI overpayment. Therefore while we cannot waive the SSI overpayment we will reduce the amount of SSA we count as income to Larry by $100.00 during the period you are refunding the SSA overpayment. We have done this retroactively to May 1992 the first month that you refunded on the SSA overpayment.

(T. 100).

On a form dated September 27, 1993, plaintiff requested a hearing to review this determination (T. 36). Meanwhile, in July of 1993, the Cantalician Center was appointed as Larry's representative payee (T. 104).

A hearing to review the denial of plaintiff's request for a waiver was held on May 23,

---

**2.** References preceded by "T" are to page numbers of the transcript of the administrative record, filed by defendant as part of the answer to the complaint.

**3.** Title II of the Social Security Act, 42 U.S.C. § 423 *et seq.*

**4.** At oral argument before this court, which took place on November 7, 1996, plaintiff advised the court and counsel that Larry died in March of 1995.

**5.** This amount apparently includes the $1,316.00 claimed as an overpayment of Larry's SSI benefits for the May, 1991 through August, 1991 period (*see* T. 22).

222

1994 before Administrative Law Judge ("ALJ") Karen Baker (T. 39–81). Plaintiff appeared and testified at the hearing, as did the claimant Larry Harzewski. Neither the plaintiff nor the claimant were represented by counsel· at the hearing. Judith Mazierski and Janet Stroh from the Cantalician Center also appeared and testified. Ms. Mazierski is the Residential Director and Ms. Stroh is a social worker for the Cantalician Center (T. 41–42).

In a decision dated August 11, 1994, ALJ Baker found that Larry was overpaid benefits totaling $6,159.16 from May through November, 1991, and January through May, 1992, and that plaintiff was not without fault in receiving and accepting the overpayment as the claimant's representative payee during those periods. The ALJ also found that plaintiff was solely responsible for recovery of the overpayment (T. 17–30).

This decision became the final determination of the Commissioner when the Appeals Council denied plaintiff's request for review (T. 4–5). Plaintiff then filed this action on November 27, 1995 (Item 1).

### DISCUSSION

#### I. Scope of Judicial Review.

■ The Social Security Act states that, upon review of the Commissioner's decision by the district court, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g)(1991). Substantial evidence is defined as evidence which a "reasonable mind might accept as adequate to support a conclusion...." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938), *quoted in Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir. 1991). Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson, supra,* 402 U.S. at 401, 91 S.Ct. at 1427. The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir.1982). The Commissioner's determination cannot be upheld, however, when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Grey v. Heckler,* 721 F.2d 41, 44 (2d Cir.1983); *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979).

#### II. Recovery/Waiver of SSI Overpayment.

■ Section 1383(b) of the Social Security Act provides the framework for recovery by the Commissioner of an overpayment of SSI benefits. That section provides, in pertinent part, as follows:

(1)(A) Whenever the [Commissioner] finds that more ... than the correct amount of benefits has been paid with respect to any individual, proper adjustment or recovery shall ... be made by ... recovery from such individual or his [or her] eligible spouse (or from the estate of either)....

\*   \*   \*   \*   \*   \*

(B) The [Commissioner] ... shall make such provision as [s]he finds appropriate in the case of payment of more than the correct amount of benefits with respect to an individual with a view to avoiding penalizing such individual or his [or her] eligible spouse who was without fault in connection with the overpayment, if adjustment or recovery on account of such overpayment in such case would defeat the purposes of this subchapter, or be against equity or good conscience....

42 U.S.C. § 1383(b)(1)(B). The Commissioner is empowered to recover an SSI overpayment from the representative payee directly through a refund. *Steinhardt v. Sullivan,* 752 F.Supp. 95, 97 (S.D.N.Y.1990); *see also Evelyn v. Schweiker,* 685 F.2d 351, 352 (9th Cir.1982); Social Security Ruling ("SSR") No. 64–7, 1964 WL 3608(SSA) ("Where a representative payee receives an overpayment of [Title 11] benefits on behalf of a beneficiary, the payee and the beneficiary may, under certain circumstances, be jointly and individually liable for the overpayment."); SSR 84–6a, 1984 WL 49801(SSA) (same for Title XVI).

In addition, the regulations provide that waiver of the recovery of an SSI overpayment may be granted when the Commissioner makes the following findings:

(a) The overpaid individual was without fault in connection with an overpayment, and

(b) Adjustment or recovery of such overpayment would either:

(1) Defeat the purpose of title XVI, or

(2) Be against equity and good conscience, or

(3) Impede efficient or effective administration of title XVI due to the small amount involved.

20 C.F.R. § 416.550 (1996).[6] The individual seeking a waiver has the burden of establishing that he or she meets both of these requirements. *Valente v. Secretary of Health and Human Services,* 733 F.2d 1037, 1042 (2d Cir.1984); *Steinhardt v. Sullivan, supra,* 752 F.Supp. at 97.

With respect to the determination of fault, the regulations provide as follows:

*Without fault* relates only to the situation of the individual seeking relief from adjustment or recovery of an overpayment. The overpaid individual (and any other individual from whom the Social Security Administration seeks to recover the overpayment) is not relieved of liability and is not *without fault* solely because the Social Security Administration may have been at fault in making the overpayment. In determining whether an individual is without fault, the *fault* of the overpaid person and the *fault* of the individual seeking relief under the waiver provision are considered. Whether an individual is *without fault* depends on all the pertinent circumstances surrounding the overpayment in the particular case. The Social Security Administration considers the individual's understanding of the reporting requirements, the agreement to report events affecting payments, knowledge of the occurrence of events that should have been reported, efforts to comply with the reporting requirements, opportunities to comply with the reporting requirements, understanding of the obligation to return checks which were not due, and ability to comply with the reporting requirements (e.g., age, comprehension, memory, physical and mental condition). In determining whether an individual is without fault based on a consideration of these factors, the Social Security Administration will take into account any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual may have. Although the finding depends on all of the circumstances in the particular case, an individual will be found to have been at fault in connection with an overpayment when an incorrect payment resulted from one of the following:

(a) Failure to furnish information which the individual knew or should have known was material;

(b) An incorrect statement made by the individual which he [or she] knew or should have known was incorrect (this includes the individual's furnishing his [or her] opinion or conclusion when he [or she] was asked for facts) or

(c) The individual did not return a payment which he [or she] knew or could have been expected to know was incorrect.

20 C.F.R. § 416.552.

In making the "without fault" determination, the ALJ must consider all of these matters, developing the record fully, and must state clearly her rationale for the conclusions she draws so that, if appealed, her decision may be given appropriate judicial review. *Valente v. Secretary of Health and Human Services, supra,* 733 F.2d at 1045. In addition, an evaluation of fault normally requires "an assessment of the recipient's [or payee's] credibility ... to distinguish a genuine hard luck story from a fabricated tale." *Schwingel v. Harris,* 631 F.2d 192, 197 (2d Cir.1980). Thus, where a determination of fault necessarily rejects the claimant's or the payee's testimony, the ALJ must make an explicit finding for the record with respect to the witness's credibility. *Lieberman v. Shalala,* 878 F.Supp. 678, 682

---

**6.** All references to the Commissioner's regulations, published at 20 C.F.R. Parts 400–499, are to the Code of Federal Regulations revised as of April 1, 1996.

(S.D.N.Y.1995); *see also Valente, supra.* Absent such an explicit finding, the court cannot ascertain the underlying rationale for the determination of fault. *Lieberman, supra,*

Upon review of the record in this case, I find that the ALJ's decision is not supported by substantial evidence. Although the ALJ found that "[t]he claimant was not eligible for benefits [paid to him] from May through November 1991 and January through May 1992 totaling $6159.16" (T. 29), there is no coherent explanation of how this overpayment occurred, or what Larry's benefit levels were or should have been at any point, to provide the court with an understandable background for its review of the ALJ's decision. Instead, the decision is replete with unexplained assumptions and unsupported conclusions about plaintiff's liability for the overpayment based on the discharge of his duties as Larry's representative payee.

For example, in her recitation of the evidence, the ALJ states that on August 19, 1991, a determination was made by the SSA to waive the initial overpayment of $1316.00 resulting from Title II income. Then, on August 24, 1991, the SSA determined that plaintiff was liable for repayment of the $1316.00. Subsequently, in April of 1992, the SSA apparently worked out an agreement with plaintiff for recovery of this overpayment from Larry's Title II benefits. In September of 1992, plaintiff received notice of a $6,159.16 overpayment of SSI benefits. According to the ALJ, "[t]his notice include[d] the previous overpayment of which the claimant was notified in August 1992[sic], but the [ALJ] concludes that the new reason for the overpayment was different from the cause cited in August 1991" (T. 22).

Not only is this recitation of the evidence confusing, it provides no explanation for the SSA's facially inconsistent determinations with respect to calculation of the overpayments. Although the record is entirely unclear in this regard, the SSA apparently first waived recovery of at least part of the initial $1,316.00 SSI overpayment (*see* T. 105–06), then decided to recover this overpayment from Larry's SSI check (*see* T. 82–86), and then decided to include that same initial

amount in its notice of a second, more substantial overpayment (*see* T. 91). In light of the ambiguity of the record, the ALJ should have provided a detailed explanation as to why recovery of the initial $1,316.00 overpayment (which the SSA told plaintiff was being recovered from Larry's SSI benefits) was again being sought as part of the second SSI overpayment of $6,159.13. The ALJ's conclusion "that the new reason for the overpayment was different from the cause cited in August 1991" does not explain either the SSA's apparent reversal of its original waiver determination or its apparent attempt to recover the $1,316.00 amount twice.

■ The ALJ also concluded that plaintiff was not "without fault" for the overpayments because he failed to report the receipt of two Title II checks for Title XVI purposes. The ALJ based this finding in part on a report from an SSA claims representative that, during a visit to the servicing branch office on April 3, 1992, plaintiff "asked in an evasive manner if SSI checked the [Title II] records regularly. ." (T. 21, 119). There is no explanation in the hearing determination as to why this type of question should have been interpreted as "evasive" rather than as a legitimate attempt to resolve the overpayment issue. In the absence of detailed findings in this regard, the inference to be drawn from the ALJ's decision is that plaintiff breached an affirmative obligation to notify the SSA that the two survivor's disability insurance benefits checks Larry had been receiving since soon after his mother's death—one on his father's account and one on his mother's account—should have been considered cumulatively in the calculation of Larry's SSI benefits (*see* T. 26).

There is nothing in the record to suggest that a claimant or representative payee should be charged with this type of affirmative obligation. The ALJ somewhat obliquely refers to the duty, of the representative payee "to report Social Security changes for supplemental security income purposes" (T. 26), as expressed on the standard form used for application to serve as representative payee as well as in various informational booklets and on annual redetermination forms (T. 25–26). The example in the record

referred to by the ALJ is the application of the Cantalician Center to become Larry's representative payee (T. 120–25), *not* plaintiff's application.

The information contained on the application form states that, by agreeing to become the claimant's representative payee, the applicant agrees among other things to "[c]omply with the conditions for reporting certain events" ... (T. 125). The "events" are set forth at 20 C.F.R. § 416.708, and include any "change in resources," 20 C.F.R. § 416.708(d), and the claimant's "eligibility for benefits other than SSI benefits." 20 C.F.R. § 416.708(e). As discussed above, the record shows that plaintiff first contacted the SSA in February of 1991 to notify the SSA that his (and Larry's) mother had died, to return a check issued to his deceased mother's account, and to submit an application for appointment as Larry's representative payee. This application was apparently granted in April of 1991, although the there is no documentation in the record to show what action the SSA took in this regard. The overpayments began the next month, in May of 1991. As testified to by plaintiff, and as he has maintained throughout these proceedings, he was not told by his mother or by anyone at the SSA what the level of Larry's benefits were, how the benefits were calculated, how many checks he would be receiving per month, etc.

Therefore, from this record, it would not be unreasonable for plaintiff to conclude that there was no "change" in benefits to report, at least until he received the first notice of overpayment. Then, when he did receive the notice, he promptly filed for a waiver of overpayment, as the notice instructed him to do. When the waiver was denied, he promptly contacted the SSA, visited the branch office, and otherwise attempted to resolve the $1,316.00 SSI overpayment. In a statement dated April 10, 1992, plaintiff advised the SSA that he "had no knowledge that ... Larry ... was being overpaid because of being paid on both my mother's ... and my father's ... records. I didn't know that he should not have been receiving two checks" (T. 115). Based on this statement, and the obvious fact that the overpayment

was made on Larry's SSI account, it would not be unreasonable for plaintiff to conclude that the SSA was aware of Larry's eligibility for both survivor's disability insurance and SSI benefits.

Furthermore, the ALJ's finding that "[a]ccurate reporting of substantial bank balances would have led to an investigation of the sources of the claimant's income, and the 'double entitlement' error would have been discovered much sooner" (T. 24), is speculative at best. As discussed above, in his statement dated April 10, 1992, plaintiff reported the receipt of the two survivor's disability insurance benefits checks. Repayment of the initial $1,316.00 overpayment was negotiated at that time. The record shows, therefore, that by April of 1992 the SSA had all the information it needed to have in order to determine that Larry's SSI benefits were being miscalculated, and that plaintiff had done everything the SSA required him to do in order to correct the error. The ALJ does not explain how more accurate reporting of bank account balances by plaintiff would have triggered a more thorough investigation by the SSA.

■ Indeed, this court's review of the bank account information, expense receipts, and other financial information in view of the record as a whole suggests nothing more than plaintiff's good faith efforts to comply with his obligations as Larry's legal guardian and representative payee, not a simple task under the circumstances. To fault plaintiff for the SSA's obvious failure to properly calculate Larry's SSI benefits would conflict directly with this court's obligation, in light of the "remedial nature and humanitarian aims of the Social Security Act," to construe the Act broadly and apply it liberally. *Hammonds v. Bowen*, 652 F.Supp. 491, 494 (S.D.N.Y.1987) (citing *Adams v. Weinberger*, 521 F.2d 656, 659 (2d Cir.1975)).

Finally, it is important to note that the claimant is deceased, and therefore the recovery of overpayments which the Commissioner seeks cannot come out of future benefits due to be paid to the claimant, but rather is sought directly from the former representative payee's personal funds. There is no evidence in the case to support a conclusion

that plaintiff, as representative payee, personally benefitted from his actions on behalf of his brother. Therefore, absent clear evidence that plaintiff was at fault, I find that it would be against equity and good conscience to recover the overpayment from plaintiff.

Accordingly, upon review of the record as a whole, I find that the ALJ's determination that plaintiff was not without fault in causing overpayments of Larry's SSI benefits is not supported by substantial evidence. I also find that, due to the length of time this matter has consumed at the administrative and judicial levels to date (over 5 years), as well as the substantial evidence in the record to support a finding that recovery of the overpayment amount from plaintiff would either defeat the remedial purpose of Title XVI, be against equity and good conscience, or impede efficient or effective administration of Title XVI due to the small amount involved, *see* 20 C.F.R. § 416.550, remand to the Commissioner for further proceedings would serve no purpose. *See, e.g., Rivera v. Sullivan,* 923 F.2d 964, 970 (2d Cir.1991); *Donath v. Sullivan,* 1990 WL 299416, at *5–6 (W.D.N.Y. Oct.26, 1990).

### *CONCLUSION*

For the foregoing reasons, defendant's motion for judgment on the pleadings (Item 13) should be denied. Plaintiff's motion for judgment on the pleadings (Item 10) should be granted, and judgment should be entered in favor of plaintiff reversing the Commissioner's determination without remand, pursuant to 42 U.S.C. § 405(g), sentence four.

Plaintiff's motion for appointment of counsel (**Item 12**) is denied without prejudice.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

**SO ORDERED.**

Dated: November 21, 1996.