Robin ADAMS, Plaintiff,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES OF the UNITED STATES of America, Defendant.

No. 85–1265.

United States District Court,
C.D. Illinois,
Peoria Division.

Sept. 22, 1986.

Mark T. Campbell, Prairie State Legal Services, Inc., Peoria, Ill., for plaintiff.

L. Lee Smith, Asst. U.S. Atty., Peoria, Ill., for defendant.

## ORDER

MIHM, District Judge.

The Plaintiff, Robin Adams, has filed suit seeking review of a final decision by the Secretary of the United States Department of Health and Human Services finding that she had received an overpayment of child's benefits to her daughter, Melissa Hibser, in the amount of $2,223.60 and denying waiver of that amount. The benefits had been paid pursuant to 42 U.S.C. §§ 402(d), 405, 416, and 1302. Judicial review is permitted and defined by 42 U.S.C. § 405(g).

■ In order to qualify for a waiver of reimbursement under the Social Security Act, a person must be "without fault" and there must be a showing that the requirement to return the overpayment would defeat the purpose of the Act or be against equity and good conscience.

The burden of proof is on Plaintiff to establish the absence of fault and the injury to the purposes of the Act or equity or good conscience.

Judicial review of an Administrative Law Judge's (ALJ) findings pursuant to these standards is limited to scrutiny of the record in its entirety and a determination of whether each essential element of the administrative findings is supported by substantial evidence. 42 U.S.C. § 405(g); *Lechelt v. Cohen*, 428 F.2d 214 (7th Cir. 1970); *Strickland v. Harris*, 615 F.2d 1103 (5th Cir.1980). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). In making this determination, the Court must be extremely cautious to avoid substituting its judgment for that of the ALJ, *Strickland v. Harris*, supra) but may also not relieve itself of the problem of considering and resolving complex issues by "uncritical rubberstamping of the administrative action." *Stark v. Weinberger*, 497 F.2d 1092 (7th Cir.1974).

If there is a conflict in the evidence, the burden is upon the claimant to prove that he or she meets the requirements of eligibility. *Johnson v. Weinberger*, 525 F.2d 403, 407 (7th Cir.1975). In addition, an Administrative Law Judge's credibility determination regarding subjective evidence should be given considerable weight by the court. *Bibbs v. Secretary of Health, Education & Welfare*, 626 F.2d 526, 528 (7th Cir.1980); *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir.1984); *Zalewski v. Heckler*, 760 F.2d 160 (7th Cir.1985).

Since the formulation of the local procedure for handling Social Security appeals, the Court's attention has been directed to the case of *Garcia v. Califano*, 463 F.Supp 1098 (N.D.Ill.1979). In that action, the Court held that motions for summary judgment are "procedural improper vehicles for

a decision on the merits" in Social Security disability cases. The Court believes this to be a proper interpretation and will, accordingly, treat the pleadings in the present case as Plaintiff's motion to reverse and Secretary's motion to affirm.

Robin Adams is the mother of Melissa L. Hibser (who was ten years old on March 7 of this year) and the divorced wife of Roy Hibser. The Social Security Administration had determined that Mr. Hibser was disabled and entitled to receive benefits and, on August 1, 1978, Plaintiff signed an application prepared by Roy Hibser for benefits for Melissa as permitted by 42 U.S.C. § 402(d). Payments on the child's behalf began in January, 1979 and continued until June of 1982 when they were discontinued by the Administration.

Apparently, during that period of time, Roy Hibser had been performing substantial, gainful work while continuing to collect his disability benefits. The Social Security Administration learned of his deception and, in February of 1982, advised Plaintiff that there appeared to have been an overpayment of benefits to Melissa and that she had ten days to present additional evidence for consideration. She was told that she would be advised when a formal determination was made. There was no further communication between the Administration and Plaintiff and all payments were discontinued effective the end of June, 1982.

On November 12, 1983, Plaintiff received a letter which informed her that the original overpayment was $10,806.10 but that, because she had not been notified until February 1982 of any problem, that $8,582.50 would be excused. The Officer of Disability Operations told her that the Administration would not, however, relieve her of the obligation to repay the balance of $2,223.60 for the period February 1982 through June 1982. Ms. Adams sought and was granted a meeting with claims representatives of the Administration and, on January 4, 1984, the revised overpayment was confirmed and waiver was

denied. She was informed of this decision by letter dated March 9, 1984.

On that same day she requested a hearing on the overpayment; that hearing was held on July 12, 1984 before an Administrative Law Judge. On July 30, 1984, the ALJ issued his decision affirming the earlier denial of waiver by the Administration. Thereafter, on October 11, 1984, Plaintiff sought review of the matter by the Appeals Council and on April 25, 1985, the Council upheld the ALJ's decision. That action became the final decision of the Secretary.

The only issue before the Court in this action is whether the final decision of the Secretary is supported by substantial evidence in the record.

## ANALYSIS AND DECISION

Plaintiff has no quarrel with the decision of the Social Security Administration that there was an overpayment because of Roy Hibser's apparent duplicity or that, as a result of his activity, her daughter Melissa became ineligible for continued payment of child's insurance benefits. Plaintiff only objects to being held responsible for reimbursing the Social Security Administration for the overpayment to Melissa.

Overpayments and underpayments of benefits are covered under 42 U.S.C. § 404 which is quoted here in pertinent part:

"§ 404. *Overpayments and Underpayments*

*(a) Procedure for Adjustment or Recovery*

Whenever the Secretary finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made, under regulations prescribed by the Secretary, as follows:

\*    \*    \*    \*    \*    \*

*(b) No Recovery from Persons Without Fault*

In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if

such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience."

The Court reads this section as establishing a two-pronged test for determining whether reimbursement of the overpayment can be waived. One receiving benefits in an excessive amount may be relieved of the obligation to return the surplusage if:

(1) the person is without fault, and

(2) adjustment or recovery would either:

(a) defeat the purpose of Title II of the Act, or

(b) be against equity and good conscience.

The ALJ made the initial determination that Plaintiff was not "without fault" and, therefore, never reached the second step of the analysis. The Social Security Administration had already found that Robin Adams had no knowledge of Roy Hibser's wrongful acceptance of disability payments prior to receiving the letter from them on February 15, 1982. The finding that she bore some fault between February and June must necessarily turn on the contents of that letter since she had no other contact with the agency before the payments were stopped. Because of this fact, the letter is reproduced here in its entirety.

"Dear Mrs. McGowan:

This notice pertains to the benefits you are receiving on the claim of Melissa L. Hibser. Based on the evidence now in file, it appears that a determination will have to be made that Roy Hibser has the ability to engage in substantial gainful activity as of February 1980, and, in accordance with the law, is no longer disabled. Accordingly, all benefits being paid on that claim will be stopped. The purpose of this notification is to give you an opportunity to present any additional evidence for consideration.

Unless we hear from you within ten days from the receipt of this notice, we will make a formal determination based on the evidence in file. It is important, therefore, that you submit any statements or evidence you wish to be considered within ten days or let us know if more time is needed.

You will be informed in writing when a formal determination is made."

The letter was signed by C. Mailloux who was a claims representative for the agency.

The Secretary has argued, and the Court fully concurs, that this letter, constituting alleged misinformation or lack of pertinent information furnished by an employee of the Government, cannot work an estoppel against the Secretary. *Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 rehearing denied 451 U.S. 1032, 101 S.Ct. 3023, 69 L.Ed.2d 401 (1981); *Cheers v. Secretary of Health, Education and Welfare*, 610 F.2d 463 (7th Cir.1979); *Abbott v. Harris*, 610 F.2d 563 (8th Cir. 1979); *Goldberg v. Weinberger*, 546 F.2d 477 (2nd Cir.1976). The issue here is not estoppel of the Government but, rather, whether, being in possession of the information imparted in the letter, it may fairly be found that Plaintiff was "without fault" in having accepted benefit checks between February and June of 1982.

The Court is mindful of its obligation to forego the temptation to substitute its judgment for that of the ALJ and would certainly defer to that judgment if the letter disclosed anything which supported it.

The plain language of the first paragraph indicates that the actual determination of Roy Hibser's ineligibility had not been made at that point. The preliminary finding is "based on the evidence now in file" and it only "appears that a determination will have to be made" that he is no longer disabled. It is then stated that "accordingly" (which the Court interprets to means "in that event") "all benefits being paid ... will be stopped." The agency then reemphasizes the tentative nature of its finding by indicating that there is still time for Plaintiff to present "additional evidence for consideration."

Paragraph 2 reinforces the suggestions of paragraph 1 by saying that "we *will make a formal determination* based on

the evidence in the file" in the event Plaintiff submits no additional evidence within ten days or seeks a time extension.

Finally, Ms. Adams is told flatly that "when a formal determination is made," she will be informed "in writing." No such notification appears anywhere in the record. In fact, Plaintiff testified at the hearing that she heard nothing more from the agency until she received the notice of overpayment.

The Court also finds in the letter significant omissions of information. Plaintiff was not told that she might not be entitled to additional checks if she received them or that she accepted them at the risk of having to reimburse the agency. She was also not informed of the possible requirement of reimbursing any payments received during the previous two years when Roy Hibser might not have been disabled. Nor did the letter cite to a statute or regulation from which she might possibly have gleaned such information. In fact, in the "Statement of Claimant or Other Person" appearing in the record at page 58, Plaintiff states that she would have returned the checks uncashed had she been told clearly that she was not entitled to them.

In addition to the substance of the letter, the record discloses, at page 30, that after she received it, Plaintiff called Roy Hibser and he told her not to worry about it, that he would take care of everything. Three months later he told her it had been taken care of as far as he knew. Since he had actually filled out the original application for benefits for Melissa and obtained Plaintiff's signature, it was not unreasonable for her to believe that he had some concern for the child's well-being and would take steps to avoid her loss of benefits. This factor has some, but not overwhelming, significance in assessing Plaintiff's understanding of the situation on February 15, 1982.

■ For these reasons, the Court finds that the finding of the ALJ that Plaintiff, Robin Adams, was not "without fault" in the circumstance of the overpayment of benefits to Melissa Hibser lacks the support of substantial evidence in the record and must be reversed.

That finding, however, satisfies only one prong of the test. There must be a showing as well that requiring repayment to the agency would either defeat the purpose of Title II of the Act, or be against equity and good conscience.

The Court is aware of the fact that the Secretary has made no specific finding on that issue. In the absence of sufficient facts in the record, the proper course for this Court would be to remand to the Secretary for the second determination. However, the Court finds that the information already present is quite adequate and believes that this matter should, if possible, be wholly resolved now. Moreover, the Court has the benefit of argument submitted by both Plaintiff and the Secretary in their memoranda on the issue of the Plaintiff's ability to satisfy the second set of criteria.

■ The Court first considers whether repayment is inconsistent with the purpose of the Act. It is quite clear that the purpose of § 402(d) is to replace the financial support of a minor child which the wage-earning parent is no longer able to provide during a period of disability. It goes without saying that, if the wage-earner is capable of gainful employment, and is in fact so employed, the Act intends no payment, and reimbursement would ordinarily be a reasonable and proper result.

However, 20 C.F.R. 404.508 interprets "defeat of the purpose of Title II" to also cover situations where the overpaid person needs substantially all of his, or in this case her, current income to meet current ordinary and necessary living expenses (see record at page 10). It thus appears that in considering this factor, the individual's personal financial circumstances are relevant. The record is replete with evidence of Robin Adams' current financial circumstances and, in fact, the ALJ alluded to them at page 11 of the record in recommending that reimbursement be accepted in installments.

At the time of the hearing, Robin Adams was 25 years old and twice-divorced. She was the mother of two children—Melissa, then age 8, the daughter of Roy Hibser, and Allen McGowan, Jr., then age 2. She had in the past worked part-time as a fry/cook but was unemployed at the time of the hearing because she was studying full time at Illinois Central College to become a legal secretary. This is, according to her testimony, a three and one-half year program which she was scheduled to complete in 1985.

In the meantime, she was totally supported by public aid (record at 32–33). Any child support contributions being paid by Roy Hibser were being sent directly to public aid. Prior to seeking public assistance, Plaintiff had been forced in the past to seek help, in the form of food and shelter, from her parents, paying them when and what she was able.

Beyond the fact that public aid only provides what it determines is necessary for the subsistence of the families it supports, it would fly in the face of reason to require the taxpayers of Illinois to pay the taxpayers of the United States to cover a repayment by a person who was innocent of any acts creating or enhancing it. Plaintiff does not seek to continue receiving the benefits but only to be relieved of the obligation of reimbursing past receipts. The Court believes, in this circumstance, that to require repayment of the overpayment would defeat the purpose of the Act as defined by the Secretary.

The Court next considers whether Plaintiff is eligible for excuse from repayment because such recovery by the agency would be "against equity and good conscience." In considering this factor, Plaintiff's personal financial circumstances are irrelevant. 20 C.F.R. § 404.509.

If Plaintiff had personally acted to defraud the agency and, ultimately, other qualified recipients, or even conspired with or aided and protected her divorced husband by her silence, there seems little doubt that compelling her to pay would be a fair and just judgment. Plaintiff, however, appears to have been totally without complicity in or knowledge of the acts of her former husband, and the Secretary has, in fact, so found.

However, the purpose of the allocation of funds is to benefit those who are in need and the amount of available monies is finite. Thus, the Secretary is not precluded, as the Court reads the Act, from recovering overpayments from those who actually receive them unless such a requirement would be inequitable or against good conscience.

The ALJ has explained (record at page 10) that, in the Social Security Act context, that clause means:

"That adjustment or recovery of an incorrect payment (under Title II or Title XVIII) will be considered inequitable if an individual, because of a notice that such payment would be made or by reason of the incorrect payment, relinquished a valuable right or changed his position for the worse. In reaching such a determination, the individual's financial circumstances are irrelevant (20 C.F.R. 404.509)."

█ Prior to Roy Hibser's preparation and submission of the application for disability benefits on behalf of Melissa, he was making payments for her support pursuant to a decree of divorce. Upon determination by the agency that he was entitled to have such payments made on his behalf, Robin Adams refrained from demanding and receiving such payments, due as of right from him, accepting the Social Security checks in lieu thereof.

In light of ensuing events, there can be little question that her relinquishment of such right to obtain child support directly from Roy Hibser was a detrimental change of position. Because of it, she is being required to pay a penalty (with money which she assertedly does not have) stemming from a wrong-doing in which she played no part. The Court here holds that to require such repayment would be against equity and good conscience.

For these reasons, the Court finds that Robin Adams is able to satisfy either element of the second prong of the test and should be absolved from the obligation to reimburse the overpayment.

It is, therefore, ordered that the decision of the Secretary denying waiver of adjustment or recovery of the incorrect payment is not supported by substantial evidence in the record. Accordingly, the Motion of Plaintiff for reversal of the decision is hereby GRANTED and that of the Secretary for affirmance is DENIED.