Marjorie M. HIGGINS, Plaintiff,

v.

Donna SHALALA, Secretary of Health
and Human Services, Defendant.

Civ. No. 93–NC–159S.

United States District Court,
D. Utah,
Northern Division.

Aug. 29, 1994.

Carlie Christensen, Asst. U.S. Atty., Salt Lake City, UT, for plaintiff.

Michael E. Bulson, Utah Legal Services, Inc., Ogden, UT, for defendant.

ORDER DENYING THE PLAINTIFF'S MOTION TO REVERSE OR MODIFY THE ADMINISTRATIVE DECISION AND GRANTING THE DEFENDANT'S MOTION TO AFFIRM THE ADMINISTRATIVE DECISION

SAM, District Judge.

The plaintiff, Marjorie M. Higgins, contests a decision of the Secretary of Health and Human Services denying her disability insurance benefits and supplemental security income. The matter came before the court on Mrs. Higgins' appellate brief and the Secretary's motion to affirm the administrative decision. For reasons discussed more fully below, Mrs. Higgins' brief is treated as a motion to reverse or modify the administrative decision and is denied; the Secretary's motion to affirm the administrative decision is granted.

1. Of course, parties cannot determine by stipulation which procedural rules the court will apply

### I. Background

At the time of the administrative hearing, Mrs. Higgins was a 51-year-old woman with a high school education. She alleged disability since March 1991 due to degenerative diseases of the spine and associated pain. In August 1990, she was laid off from her job as a license clerk at Hill Air Force Base during a reduction in force. She also had prior work experience as a security guard, an office clerk, a telephone solicitor, a general office clerk, and a cashier.

### II. Discussion

#### A. Procedure for judicial review of the Secretary's decision by a district court

As a preliminary matter, the court notes that the procedure to follow for judicial review of an administrative decision regarding social security benefits is somewhat unclear in this circuit. Higgins submitted a Stipulation for Scheduling Order in which the parties "stipulate that this case may be treated as an appeal ... in accordance with Rule 31 of the Federal Rules of Appellate Procedure."[1] However, the Secretary filed a motion to affirm the administrative decision rather than the appellate brief contemplated by the stipulation.

Mrs. Higgins cites a concurring opinion by Senior District Judge Kane in *Hamilton v. Secretary of Health & Human Services,* 961 F.2d 1495, 1500–04 (10th Cir.1992). Judge Kane expressed the view that a motion to affirm is "not authorized by Congress and in fact is prohibited by this court in cases before us." *Id.* at 1500. Nevertheless, the majority of the Tenth Circuit panel affirmed the district court's order granting the Secretary's motion to affirm the administrative decision. *Id.* at 1497. *See also Greer by Greer v. Heckler,* 756 F.2d 794, 796 (10th Cir.1985) (affirming a district court's order which granted the Secretary's motion to affirm the administrative decision and denied the claimant's motion for summary judgment).

to their case.

Judge Kane also criticized the use of motions for summary judgment in these cases. As he points out, a motion for summary judgment is inapposite because the admissible evidence is generally limited to the administrative record. Indeed, the Tenth Circuit has held that a district court is precluded from entering summary judgment upon review of a decision by the Board of Land Appeals under the Administrative Procedures Act. *Nickol v. United States,* 501 F.2d 1389, 1391 (10th Cir.1974). And in a subsequent Social Security appeal, the Tenth Circuit observed that *Nickol* "discusses judgments in cases of this type." *Mandrell v. Weinberger,* 511 F.2d 1102, 1103 (10th Cir. 1975).

■ Judge Kane suggested that "district courts should process these cases as appeals, eliminate aberrant motion practices, and follow the Federal Rules of Appellate Procedure." *Id.* 961 F.2d at 1504. This court is not convinced that a district court should apply the Federal Rules of Appellate Procedure. Rather, district courts should adapt their local rules and the Federal Rules of Civil Procedure to the statutory standards for review of Social Security decisions.

Subsection (g) of 42 U.S.C. § 405 authorizes the district court to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for rehearing." This language suggests that the Secretary should file a motion for a judgment affirming the decision, while the claimant should file a motion for a judgment modifying or reversing the decision.[2]

A number of courts which have addressed the issue, treat a motion for summary judgment as a motion to affirm when brought by the Secretary and a motion to reverse or modify when brought by the claimant. *Adams v. Secretary of Health & Human Servs.,* 653 F.Supp. 249, 251 (C.D.Ill.1986); *Robinson v. Heckler,* 593 F.Supp. 737, 740 (D.D.C.1984); *Graham v. Heckler,* 580 F.Supp. 1238, 1239 n. 2 (S.D.N.Y.1984); *Pen-*

*rose v. Heckler,* 566 F.Supp. 301, 303 (D.Nev. 1983); *Garcia v. Califano,* 463 F.Supp. 1098, 1100–01 (N.D.Ill.1979); *Brown v. Secretary of Health, Educ. & Welfare,* 403 F.Supp. 938, 940 (D.Wis.1975).

■ Judge Kane objects to a motion to affirm because "a claimant is deprived of the opportunity to file a reply brief, and the government, in filing a motion to affirm, implicitly defines the issues on appeal." *Hamilton,* 961 F.2d at 1501. However, nothing in our local rules or the Federal Rules of Civil Procedure prohibits a claimant from filing a motion to reverse or modify, either initially or as a cross motion. By so doing, a claimant retains the opportunity to file a reply brief and define the issues.

Accordingly, Mrs. Higgins' "Appellate Brief" will be treated as a motion to reverse or modify the administrative decision.

### B. Standard of review

■ Courts are authorized to review only two issues: whether the Secretary's decision is supported by substantial evidence and whether it is based on correct legal standards. 42 U.S.C. § 405(g). "Substantial evidence" is more that a "mere scintilla" but may be less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Thus, a court's duty is to "examine the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determine if the substantiality of the evidence test has been met" and the correct legal test has been applied. *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800–01 (10th Cir.1991). A court must "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Id.* at 800.

### C. Eligibility for benefits

To be eligible for disability insurance benefits, a claimant must show that she meets

---

**2.** These motions are akin to a motion for judgment on the pleadings. *See* Fed.R.Civ.P. 7(b)(1)

& 12(c).

certain insured status requirements, is under age 65, and is disabled from working. 42 U.S.C. § 423(a)(1). "Disability" for these purposes means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be eligible for supplemental income benefits, a claimant must also show that her income is below statutory amounts. 42 U.S.C. § 1382(a).

### D. The Secretary's evaluation process

The Secretary's regulations set forth a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520; *Reyes v. Bowen*, 845 F.2d 242 (10th Cir. 1988). The first step is to decide whether the claimant is currently engaged in substantial gainful employment. If she is gainfully employed, the claim is denied without further evaluation.

The second step is to decide whether the claimant's impairments are "severe." If they aren't severe, the claim is denied without further evaluation.

The third step is to decide whether the impairments meet or equal the medical findings listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P. If so, the claim is approved without further evaluation. If not, the fourth step is to decide whether the claimant's impairments prevent her from performing her past relevant work.

If the claimant could return to her past relevant work, the claim is denied. If not, the last step is to decide whether she could engage in other substantial gainful activity, considering her age, education, and past work experience. The claim is granted only if there is no substantial gainful activity she could perform.

### E. The administrative decision

■ The Administrative Law Judge (ALJ) found that Mrs. Higgins has not engaged in substantial gainful activity since March 1991,

that she has a "severe" musculoskeletal impairment, that her impairments do not satisfy the listings, and that she retains the residual functional capacity for some sedentary work. (R. 34, findings # 3–6.)[3] He acknowledged that she experienced "mild to moderate musculoskeletal pain" which limited the range of sedentary work she could perform to jobs where she could alternate sitting, standing, and walking and would not be required to squat or climb. (*Id.*, finding # 6.) However, he found that she could still perform her past relevant work as a telephone solicitor and therefore concluded that she was not disabled. (R. 35, findings # 8 & 10.)

Mrs. Higgins argues that the ALJ used the wrong factors to evaluate her complaints of pain, erred in assessing the credibility of her complaints, failed to give proper weight to the opinions of her treating physicians, and relied on a vocational expert's testimony which was based on an inapposite, hypothetical question.

### 1. Evaluating subjective complaints of pain

A claimant who alleges disabling pain must first present objective medical evidence of an impairment "which could reasonably be expected to produce the pain or other symptoms alleged and which ... would lead to a conclusion that the [claimant] is under a disability." 42 U.S.C. § 423(d)(5)(A). If an impairment is "reasonably expected to produce some pain, allegations of disabling pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence." *Luna v. Bowen*, 834 F.2d 161, 164 (10th Cir.1987). An impairment that is likely to produce some back pain, for example, may reasonably be expected to produce severe back pain in a particular claimant. *Id.*

Mrs. Higgins presented objective medical evidence of an impairment which could reasonably be expected to produce back pain. X-rays and a magnetic resonance scan showed that she suffered degenerative disc

---

**3.** "R. 34" refers to page 34 of the administrative record.

changes at several levels of her spine. (R. 198, 202, 227 & 230.)

The Tenth Circuit has set out certain factors which an ALJ should consider in evaluating a claimant's allegations that her pain is disabling. These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan,* 945 F.2d 1482, 1489 (10th Cir.1991) (citing *Huston v. Bowen,* 838 F.2d 1125, 1132 (10th Cir.1988)).

A review of the ALJ's decision confirms that he took many of these factors into account when evaluating Mrs. Higgins' claim. He noted that she "is not maintained on extraordinary types or dosages of medication which drastically erode the ability to perform work activities" and that there was no evidence of "substantial use of prescriptive pain medications for prolonged periods" but "only the use of coated aspirin (Ascriptin)." (R. 30–32.) This finding is supported by Mrs. Higgins' testimony at the administrative hearing:

Q: Do you take pain medication?

A: Just aspirin.

Q: And does that relieve any of your symptoms?

A: It helps, yeah. I take maybe six on a good day, eight on a bad day.

Q: Has anything stronger than aspirin been prescribed for you?

A: Painkillers?

Q: Yes.

A: I never touch them.

Q: Have they been prescribed?

A: I think in the very beginning, yes.

Q: Why—

A: And I told them no, I didn't want them.

Q: Why didn't you take them?

A: I guess I'm afraid of becoming addicted to them.

(R. 78–79.)

The ALJ observed that the treatment for Mrs. Higgins' pain had been "less than aggressive." (R. 32.) He found evidence of a "distant attempt at chiropractic manipulations" but no evidence that her physicians had "given serious consideration to back surgery." (*Id.*) The court's review of the record likewise reveals no evidence of serious treatment for pain. Mrs. Higgins testified as follows:

Q: ... Have you had any therapy for your back?

A: No.

Q: Has anything been prescribed?

A: One doctor said, have you—has anyone recommended surgery, and the other doctor said, has anyone ever recommended therapy, but nobody's ever given me any.

Q: Do you do any therapy of your own at all at home?

A: No.

Q: Use a heating pad or anything?

A: No.

(R. 78).

The ALJ also thought it "significant that the claimant found herself out of work [in August 1990] because of [a] reduction in force and then accepted unemployment benefits until her amended alleged onset date of disability [March 1991]." (R. 32.) These facts suggested to the ALJ that she would still be working at her last job, but for the reduction in force, if she had not suffered an intervening injury or worsening of her medical condition. However, her medical records did not show any intervening injury or worsening of her medical condition during that period.[4] (*Id.*)

As discussed above, Mrs. Higgins presented objective medical evidence of degenerative disc changes. The ALJ noted that there was no evidence, however, of "persistent signifi-

---

4. She did report a worsening of her medical condition after being struck by some shopping carts at a grocery store almost two years earlier on October 16, 1988. (R. 200, 204, & 206.)

cant manifestations of muscular atrophy, wasting of the muscles, loss of appetite, [or] significant weight loss." (R. 31.)

The ALJ found that Mrs. Higgins' "daily activities are not significantly compromised by pain except as elected by [her] within the work capacity found herein." (R. 31.) This finding is supported to some extent by her reports of her daily activities. For example, she said she could wash a few dishes, walk a block, lift a gallon of milk, prepare simple meals when her husband was not at home, do some cleaning & laundry, crochet, and play cards. (R. 66, 68, 76, 168, 174–5, 180.) At the hearing she testified that she was physically able to drive a car but was afraid to do so:

Q: ... Can you drive a car?

A: Yeah, I can drive.

Q: Do you have any trouble with that?

A: I don't like to because I'm never sure that I'm going to have the—I will if I have to but I don't want to because if I don't have the ability, coordination, I'm afraid I'll hurt somebody, get in an accident.

(R. 70).

█ Of course, evidence that a claimant still performs minimal daily activities does not, by itself, amount to substantial evidence that a claimant does not suffer disabling pain. *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir.1993). The "sporadic performance [of household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity." *Frey v. Bowen*, 816 F.2d 508, 516–17 (10th Cir.1987).

Here the ALJ considered not only Mrs. Higgins' ability to perform daily activities, but all the other factors mentioned above. As trier of fact, the ALJ is "the individual optimally positioned to observe and assess witness credibility." *Casias*, 933 F.2d at 800. He found that Mrs. Higgins' complaints of pain were valid but that her complaints of *disabling* pain were not credible. While each of the factors he considered might not provide adequate evidence when considered separately, together they amount to substantial evidence in support of his assessment.

█ The burden of proving inability to perform past relevant work is on the claim-

ant. *Andrade v. Secretary of Health & Human Servs.*, 985 F.2d 1045, 1050 (10th Cir. 1993). The court agrees that Mrs. Higgins did not meet her burden of proving that she suffered from disabling pain.

*2. Opinions of treating physicians*

Dr. Russell N. Stirland, a general practitioner who has been treating Mrs. Higgins, reported that she has been unable to work since July 1991 because of chronic low back pain. (R. 233–234 & 241.) Nevertheless, he indicated that her limitations were "marked" rather than "severe" and explained that she could be involved in light community work activities that did not require lifting, carrying, or prolonged periods of sitting or standing. (R. 234.)

Another treating physician, Dr. Julie Hattier, D.O., reported that "Mrs. Higgins has a progressive peripheral radiculopathy that I believe should qualify her for early SSI." (R. 228.) Dr. Hattier still offered some specific work limitations: Mrs. Higgins could not lift or carry objects over 10 pounds and would need to alternate sitting and walking.

█ The Secretary must give substantial weight to the evidence and opinions of the claimant's treating physicians unless good cause is shown for finding to the contrary. *Hargis*, 945 F.2d at 1489–90; *Eggleston v. Bowen*, 851 F.2d 1244, 1246 (10th Cir.1988). A treating physician's opinion may be rejected if his conclusions are not supported by specific findings. *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir.1994).

The ALJ considered Dr. Stirland's and Dr. Hattier's medical opinions in determining that Mrs. Higgins could only perform a limited range of sedentary work. He discounted their conclusions regarding disability because the specific findings underlying those conclusions did not necessarily indicate disability. (*See* R. 28.) In doing so, the ALJ did not err; he was entitled to give more weight to the doctors' specific findings than to their opinions regarding disability. Ultimately, whether a claimant is disabled is a legal question, not a medical one—a "conclusion for the hearing officer to make." *Dray v.*

*Railroad Retirement Board,* 10 F.3d 1306, 1313 (7th Cir.1993) (citing *Kapusta v. Sullivan,* 900 F.2d 94, 96 (7th Cir.1989)).[5]

### 3. Reliance on vocational expert's testimony

■ A vocational expert's testimony based on hypothetical questions is a proper basis for determining whether or not a claimant can perform certain kinds of jobs, as long as "the findings of the ALJ regarding the claimant's limitations are supported by the record and are adequately reflected in the hypothetical questions." *Ritter v. Shalala,* 1993 WL 332306 at 4 (10th Cir. August 23, 1993). At the hearing, the ALJ asked Kristy Farnsworth, a vocational expert, to consider the following hypothetical:

Let's assume an individual of the same vocational characteristics [a 51–year–old woman with a high school education who has worked as a license clerk, a security guard, a telephone solicitor, a general office clerk, and a cashier]. Further assume that the individual would be limited to performing no more than sedentary exertion [and] ... would have to endure mild to moderate musculoskeletal pain levels in conducting a regular work day or work week. And the individual should perform little or no squatting or climbing as job duties.

(R. 86). Ms. Farnsworth responded that a person with those characteristics, skills, and limitations could work at such jobs as a license clerk or telephone solicitor.[6] (R. 88.)

The ALJ then asked Ms. Farnsworth to assume that the person would also "need to alternate sitting with standing or walking throughout a workday and ... to set the durational requirement for herself of these periods of alternation." (R. 88–89.) Ms. Farnsworth testified that most of the positions to which she had just referred "are flexible in terms of being able to sit or stand at one's discretion." (R. 89.)

Based on this testimony, the ALJ found that Mrs. Higgins could return to her past relevant work as a telephone solicitor. (R. 35, finding # 8.) Mrs. Higgins objects that the hypothetical did not take into account her other limitations. Her attorney, Mr. Bulson, asked Ms. Farnsworth to consider as part of the hypothetical, that the person would have to leave the job twice during the day because of "an emotional flare-up as a result of stress" and had a "deficit in concentration" after 15 minutes of performing the job. (R. 91–93.) Ms. Farnsworth indicated that the number of potential jobs would then be greatly reduced.

■ In formulating his hypothetical questions, the ALJ need not include alleged limitations that he does not accept as true. *Ritter,* 1993 WL 332306 at 4. The ALJ found no medical support for Mrs. Higgins' alleged mental limitations. (R. 33.) Mrs. Higgins presented no evidence of a severe mental impairment. A consulting psychiatrist's evaluation indicated that she suffered some mild symptoms of depression but her ability to concentrate was "fair." (R. 235–37.)[7]

The court agrees that Mrs. Higgins' limitations which are supported by the record are adequately reflected in the hypothetical questions which the ALJ posed.

5. Leta Bailey, a counselor for the State of Utah, Department of Employment Security, also expressed the opinion that Mrs. Higgins was "not marketable" because of "the fragile and deteriorating condition of [her] health." (R. 166.) As the ALJ correctly observed, no medical evidence was offered as a basis for this opinion. The ALJ explained that the counselor was a "nonmedical person" and that the conclusions of a state agency were not binding on the Social Security Administration, especially where the missions and standards of the two agencies differ. (R. 32–33.)

6. Mrs. Higgins described her duties as a telephone solicitor. She worked a four-hour shift, accepting orders over the phone for a telemarketing firm and entering them into a computer. This required no walking, standing, bending, or lifting; it did involve sitting. (R. 161.)

7. Mr. Bulson also asked Ms. Farnsworth how many receptionist jobs would permit a person to leave the work area every twenty-five minutes for a five-minute walk. Ms. Farnsworth conceded that if the walk required the person to leave the work area, there were "very, very few" such jobs. (R. 95.) However, there was no evidence that Mrs. Higgins would need to leave the work area in order to alternate sitting, standing, and walking, and the relevant job was that of a telephone solicitor, not a receptionist.

### III. Conclusion

The Secretary's decision was supported by substantial evidence and was based on correct legal standards.

IT IS THEREFORE ORDERED that the defendant's motion to affirm the administrative decision is granted and the plaintiff's motion to reverse or modify the administrative decision is denied.