Alberto **BANUELOS,** Plaintiff,

v.

Shirley S. **CHATER,** Commissioner
of Social Security, Defendant.

No. 96 C 4703.

United States District Court,
N.D. Illinois,
Eastern Division.

July 28, 1997.

Ashley S. Rose, Law Offices of Ashley S. Rose, Glen Ellyn, IL, for Plaintiff.

Asst. U.S. Atty. Christopher Eric Tracy, U.S. Atty.'s Office, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Plaintiff Alberto Banuelos asks this court to reverse the decision of the Commissioner of Social Security that Banuelos is not entitled to a waiver of overpayment of disability benefits under the Social Security Act. Defendant Shirley S. Chater, Commissioner of Social Security ("Commissioner"), moves the court to grant summary judgment in her favor. This court has jurisdiction to review the final decision of the Commissioner under 42 U.S.C. § 405(g). For the reasons set forth below, the court denies Banuelos' motion, grants the Commissioner's motion, and affirms the final decision of the Commissioner.

### Background

The following facts are taken from the pleadings and the record as a whole. Plaintiff Alberto Banuelos was injured at his place

of employment in 1989, and began receiving disability benefits Title II of the Social Security Act, 42 U.S.C. § 404(b), in 1990. (Tr. at 24.)[1] At the time Banuelos filed for disability, he notified Social Security of his intention to file for Worker's Compensation benefits. (Tr. at 33.) In November 1990 Banuelos began receiving Worker's Compensation benefits. (Tr. at 37, 40–44.) The Social Security Administration ("SSA") notified him that it determined his disability benefits based upon the amount of Worker's Compensation benefits he was receiving. (Tr. at 37, 40–44.) However, the SSA had not in fact adjusted his disability benefits to account for his receipt of Worker's Compensation benefits. (Tr. at 37, 40–44 .) Therefore, SSA overpaid Banuelos and his children a total of $39,799.00 in disability benefits between November 1990 and July 1993. (Tr. at 62.) Specifically, SSA overpaid Banuelos $26,543 and his two children $6,628 each. (Tr. at 25, 62.)

In December 1993, prior to notification of the overpayment, Banuelos received a Worker's Compensation settlement for $200,000 at a net of about $160,000. (Tr. at 85, 126–29.) Banuelos invested $98,000 of the settlement into a home in Mexico where his sister and parents presently live, rent-free. (Tr. at 85, 126.) In 1994, Banuelos sold a condominium, which netted him an additional $12,000. Banuelos used the money from the settlement and the sale of the condo to pay off his credit card debt, to purchase a certificate of deposit in the amount of $19,000, to loan his brother $6,500, to loan a friend $3,000, to meet his living expenses, and to maintain two cars—one worth $7,000 and the other worth $2,600. (Tr. at 85–86, 97–98.)

When Banuelos received notification of the overpayment, he requested a waiver of the overpayment. In a Special Determination Hearing, the SSA found that Banuelos was "without fault" in causing the overpayment of disability benefits. (Tr. at 64.) The SSA absolved Banuelos of the overpayment of benefits to his children. (Tr. at 64.) The SSA did not waive the remaining $26,543 overpayment to Banuelos, finding that recovery

would not deprive him of necessary funds to meet ordinary expenses. (Tr. at 64.)

Banuelos later requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 22.) At the hearing Banuelos testified that his expenses were $1,300 a month, including $695 for rent, $300 for groceries, $50 for utilities, $77 for automobile insurance, and $200 for miscellaneous expenses. (Tr. at 118–122.) Banuelos also testified that he still had liquid assets totaling over $16,000, and that he still owned the home in Mexico. (Tr. at 124–26.) The ALJ found that recovery of the $26,543 would not "defeat the purpose of the Act" or be "against equity and good conscience." (Tr. at 26.) Therefore, the ALJ did not waive the overpayment. (Tr. at 26.) The Appeals Council denied Banuelos' request for review, and Banuelos sought review in this court. (Tr. at 3–4; Pl.'s Mot. at 3.)

Banuelos now moves the court to reverse the final determination of the Commissioner that Banuelos is not entitled to a waiver for the overpayment of disability benefits. (Pl.'s Mot. at 1.) Banuelos asserts that the Commissioner did not have substantial evidence to conclude that recovery would not defeat the purpose of Title II of the Social Security Act ("the Act"), and that equity and good conscience did not preclude recovery. (Pl.'s Mot. at 3–4.) In the alternative, Banuelos urges this court to find that the Commissioner's interpretation of equity and good conscience is too narrow. (Pl.'s Mot. at 11.) The Commissioner moves for summary judgment, arguing that the law and the evidence support the decision of the Commissioner. (Def.'s Mot. at 2.)

### Analysis

On review, the court has the power to modify, affirm, or reverse the decision of the Commissioner if any essential finding of the Administrative Law Judge ("ALJ") is not supported by substantial evidence. *Adams v. Secretary of Health and Human Serv.'s,* 653 F.Supp. 249, 250 (C.D.Ill.1986) (citing 42 U.S.C. § 405(g)); *Callaghan v. Shalala,* 992 F.2d 692, 695 (7th Cir.1993). Where the Appeals Council declines to review a decision of the ALJ, that decision becomes the final

1. Throughout this Memorandum Opinion and Order, "Tr." stands for the compiled record of the documents, transcripts, and opinions filed below.

decision of the Commissioner. *Schroeter v. Sullivan,* 977 F.2d 391, 394 (7th Cir.1992). The court must affirm the denial of a request for waiver of repayment if substantial evidence supports the decision and the Commissioner has committed no error of law. *Strunk v. Heckler,* 732 F.2d 1357, 1359 (7th Cir.1984). "Substantial evidence" is relevant evidence that a reasonable mind would "accept as adequate to support a conclusion." *Angevine v. Sullivan,* 881 F.2d 519, 521 (7th Cir.1989) (quoting *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).

The reviewing court may not substitute its own judgment for that of the ALJ or reweigh the evidence; nor may the court simply rubber-stamp the ALJ's decision. *Schroeter,* 977 F.2d at 394; *Cass v. Shalala,* 8 F.3d 552, 555 (7th Cir.1993). The court must review the record in its entirety, not just the evidence that supports the Commissioner's decision. *Bauzo v. Bowen,* 803 F.2d 917, 923 (7th Cir.1986). However, where reasonable minds could differ in construing the evidence, the court must defer to the Commissioner's decision. *Angevine,* 881 F.2d at 521.

■ A specific statute, 42 U.S.C. § 404, covers overpayments of Social Security benefits:

(a) Procedure for Adjustment or Recovery

Whenever the Secretary finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made, under regulations prescribed by the Secretary, as follows:

(b) No Recovery from Persons Without Fault

In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

The regulations interpreting the Social Security Act set forth the standards that the court should apply in cases involving the recovery of an overpayment of benefits. To qualify for a waiver of reimbursement under the Social Security Act, a person must show that the overpayment was not their fault and that it would "defeat the purpose of the Act" or be "against equity and good conscience" to require repayment. 20 C.F.R. § 404.506. The plaintiff carries the burden of proof on the issues. *Adams,* 653 F.Supp. at 250.

Banuelos received disability benefits from SSA for the period covering November 1990 to June 1993. (Tr. at 40–44, 69.) Banuelos received Worker's Compensation benefits at the same time that he received disability benefits. This resulted in the overpayment of disability benefits in the amount of $26,543. The ALJ agreed with the previous determination that Banuelos was not at fault for causing or accepting the overpayment. (Tr. at 25.) However, the ALJ found that Banuelos still had to repay the $26,543 under the Act. (Tr. at 26.) This court must now determine if substantial evidence supported the ALJ's conclusion that such recovery would not defeat the purpose of the Act or offend equity and good conscience.

### I. PURPOSE OF TITLE II

■ Whether recovery of overpayment would defeat the purpose of Title II depends on "whether the person has an income or financial resources sufficient for more than ordinary and necessary needs." *See Milton v. Harris,* 616 F.2d 968, 974 (7th Cir.1980). The regulations define a recovery of overpayment that would defeat the purpose of Title II as a recovery depriving a person of income required for ordinary and necessary living expenses. 20 C.F.R. § 404.508. When determining if repayment would defeat the purpose of the Act the court may properly consider the individual's entire financial resources, including an individual's savings, interest income, and equity in real estate. *Milton,* 616 F.2d at 974.

■ In this case, the ALJ concluded that Banuelos had sufficient resources to repay the $26,543 without losing his ability to meet ordinary and necessary living expenses. (Tr. at 25.) Based upon Banuelos' own testimony, the ALJ determined that his monthly

expenses were roughly $1,300 a month including, $695 for rent, $300 for groceries, $50 for utilities, $77 for automobile insurance, and $200 for miscellaneous expenses. (Tr. at 24, 118–22.) Banuelos' resources include a home in Mexico that he purchased for $98,-000, as well as $16,000 in liquid assets and two cars. (Tr. at 24.) The ALJ also determined that Banuelos sold a condo in 1994 which netted him $12,000. (Tr. at 25.)

This court finds that substantial evidence supports the final determination of the Commissioner that recovery of the overpayment would not defeat the purpose of the Act in this case. Banuelos contends that although he purchased the home in Mexico for $98,000 "the home would probably not realize [that] amount." (Pl.'s Mot. at 8–9.) The court can not reverse the Commissioner's finding based upon a possibility that is not supported by evidence in the record. Banuelos has the burden of offering evidence that could support a finding that repayment would defeat the purpose of the Act; absent any such evidence the Commissioner's final determination must stand. See Adams, 653 F.Supp. at 250.

■ Banuelos also contends that the ALJ incorrectly characterized the $12,000 he netted from the sale of his condo as a profit. (Pl.'s Mot. at 9.) Banuelos asserts that it was merely a return of capital. (Pl.'s Mot. at 9.) However, this distinction has no bearing on the issue here. If Banuelos received $12,000 from the sale of his condo, it makes no difference to the calculation of his resources whether that money was a profit or a return of capital. Banuelos has testified that he used this money for living expenses; however, the record reveals that he lent most of this money to a relative and a friend. (Pl.'s Mot. at 9; cf. Tr. at 85.)

Viewing the evidence in its entirety, the ALJ reasonably concluded that Banuelos has financial resources in excess of $100,000, and that paying the $26,543 would leave Banuelos of being unable to meet his ordinary and necessary living expenses. Thus, it would not defeat the purpose of the Act to recover an overpayment of $26,543 from Banuelos.

## II. EQUITY AND GOOD CONSCIENCE

■ According to the regulations, a recovery of overpayment offends equity and good conscience when the individual has relinquished a valuable right or changed his position for the worse. Adams, 653 F.Supp. at 254 (citing 20 C.F.R. § 404.509). For example, an individual relinquishes a valuable right if he gives up his only source of employment after SSA erroneously notifies him that he is eligible for benefits. See, 20 C.F.R. ᵟ 404.509(a)(1) (Example 2). When a widow pays for a child to attend private school upon receipt of disability benefits and has no other funds to pay the educational expenses, the widow financially obligated herself as a result of receiving the benefits and was in a worse position than if she had never received the benefits at all. See, 20 C.F.R. 404.509(a)(1) (Example 1). Id. Equity and good conscience do not bar the recovery of overpayment of Social Security benefits from an individual who has failed to show a change in position for the worse or the relinquishment of a valuable right. Milton, 616 F.2d at 974. The fact that the overpayment was purely the fault of the Social Security Administration does not entitle the recipient to keep the overpayment. Broeckert v. Sullivan, 751 F.Supp. 1361, 1363 (W.D.Wis.1990).

■ Banuelos has not alleged that he has relinquished a valuable right, such as welfare, in reliance on the disability payments. The ALJ also determined that Banuelos had not changed his position for the worse by purchasing the home in Mexico; he merely changed the form of the assets. (Tr. at 25.) Banuelos stated on the record that he invested the money in a home in Mexico. (Tr. at 126.) Banuelos contends that this investment represents a detrimental change in his position caused by the overpayment of disability benefits. (Pl.'s Mot. at 10.) Banuelos argues that the home may not sell, that it may not be worth $98,000, or that it would be grossly unfair to force him to sell the home because he was without fault. (Pl.'s Mot. at 10 .) Lastly, Banuelos contends that the ALJ made no minimal articulation of his reasons for finding that recovery would not be "against equity and good conscience". (Pl.'s Mot. at 11.)

However, Banuelos offered no evidence regarding the real estate market in Mexico; instead he relied on the assertion that forcing him to sell the home when he was without fault for the overpayment would offend equity and good conscience. (Pl.'s Mot. at 10.) Absent any evidence to the contrary, the ALJ reasonably concluded and articulated that Banuelos merely changed the form of the asset and that it would not be against equity and good conscience to recover the overpayment. (Tr. at 25.) The ALJ noted that Banuelos could either mortgage or sell the home in order to repay the $26,543.00. (Tr. at 25.) Although Banuelos contends that recovery of the $26,543.00 would be against equity and good conscience, he has failed to meet his burden of showing that he has relinquished a valuable right or changed his position for the worse.

■ Banuelos also contends that his linguistic limitations may have contributed to his detrimental change in position and that the ALJ failed to address his linguistic limitations. (Pl.'s Mot. at 11.) However, Banuelos has misinterpreted the requirement that a plaintiff's linguistic limitations be taken into account under the Act. See 20 C.F.R § 404.510. While Banuelos' difficulty in communicating is relevant to the determination of fault, it is not relevant to whether Banuelos has changed his position for the worse in reliance on the overpayment. See id.

## III. EQUITY AND GOOD CONSCIENCE RECONSIDERED

Lastly, Banuelos invites the court to expand the definition of "against equity and good conscience" by holding the Commissioner's regulation invalid. (Pl.'s Mot. at 12–13.) Following the Eighth and Ninth Circuits, Banuelos urges the court to expand the definition of "against equity and good conscience" to include situations beyond those where an individual has relinquished a valuable right or changed their position for the worse. (Pl.'s Mot at 15–16.) However, the Seventh Circuit has applied the very interpretation of "against equity and good conscience" that Banuelos asks this court to reject. See Milton, 616 F.2d at 974; Benedict v. Director, Office of Workers' Compensation Programs, 29 F.3d 1140, 1142–43 (7th Cir.1994) (applying the same definition of "against equity and good conscience" in the Worker's Compensation context).

■ Generally speaking, where Congress has created an administrative agency to administer a program and has delegated authority to the agency to define specific provisions of the pertaining statute by regulation, the regulations are controlling so long as they are not arbitrary, capricious, or contrary to the statute itself. Chevron v. Natural Resources Defense Council, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). If the administrator of an agency has reasonably interpreted a specific provision of the statute by regulation, then the reviewing court may not substitute its judgment for that of the agency administrator. Id. The Commissioner's interpretation of regulations and statutes that govern the Social Security Administration's program are entitled to deference. See Rosado v. Wyman, 397 U.S. 397, 415, 90 S.Ct. 1207, 1219, 25 L.Ed.2d 442 (1970); Schweiker v. Gray Panthers, 453 U.S. 34, 44, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981) (Administrator's definition is entitled to "legislative effect").

■ Banuelos urges the court to follow the Eighth and Ninth Circuits and expand the definition of against equity and good conscience so that general notions of fairness can control the determination of whether repayment is required. The Eighth Circuit reversed the determination of an ALJ on the basis that the interpretation of against equity and good conscience was unreasonably narrow. Groseclose v. Bowen, 809 F.2d 502, 506 (8th Cir.1987). However, the facts of Groseclose are distinguishable from the facts of the case at bar. In Groseclose, the agency sought repayment from an individual who did not receive the payments, and who was completely unaware that the overpaid person had received the payments. Id. at 505. The Groseclose Court held that although the individual had not changed his position for the worse or relinquished a valuable right, recovery would not have been equitable. Id. at

506.[2] In the case at bar, Banuelos does not contend that someone other than himself was receiving the checks without his knowledge. Therefore, even if the holding of *Groseclose* were applied in this case, Banuelos would still have to repay the extra benefits that he received.

The Ninth Circuit has also held that the regulation defining against equity and good conscience is unreasonably narrow. *Quinlivan v. Sullivan,* 916 F.2d 524, 526–27 (9th Cir.1990).

However, the facts of *Quinlivan* are also distinguishable from the facts of the case at bar. In *Quinlivan,* the SSA overpaid the plaintiff while he was incarcerated, and did not request that he pay back the benefits until two years after his release from prison. Meanwhile, he had used the money on clothing, food, transportation, and daily living expenses. *Quinlivan,* 916 F.2d at 525. Four years after his release, he again qualified for disability benefits. *Id.* at 526. However, he was still indebted to the SSA for the previous overpayment of benefits so he was presently ineligible to receive benefits. *Id.* If the *Quinlivan* plaintiff had not used the disability benefits to sustain himself he would have qualified for public assistance. Receiving the SSA benefits put the plaintiff in a position where he was unable to obtain any public assistance without first spending the benefits. Banuelos' position is clearly distinguishable because he has not been forced into a worse position by receiving the benefits. As explained above, Banuelos has not presented evidence supporting his assertion that investing in property in Mexico was a change in position for the worse.

The interpretation of the statute that Banuelos urges this court to adopt would defeat the purpose of the statute. Banuelos contends that requiring repayment would be unfair because he was without knowledge of the overpayments. (Pl.'s Mot. at 15.) However, adopting an interpretation of the phrase "against equity and good conscience" that required a waiver of overpayment whenever the recipient was without knowledge of the overpayment at the time it was received would render superfluous the very portion of the statute at issue. *See* 42 U.S.C. § 404(b). There would no longer be any meaning to the portion of the statue that requires repayment from individuals who are without fault, because by definition those who are "without fault" are unaware of the overpayment. *See* 20 C.F.R. § 404.507. This is not an interpretation that the Ninth Circuit would support. *See Quinlivan,* 916 F.2d at 527.

Therefore, the court will reject Banuelos' invitation to expand the definition of "against equity and good conscience" to include the situation at hand. While the court is sympathetic to Banuelos' situation, the fact remains that he has received money to which he is not entitled. As one court has explained,

[i]f you receive something that belongs to someone else, you must give it back. Most children learn this fundamental precept of justice and morality before they attend school. Plaintiff would make an exception to this rule where the government owns the property which was undeservedly received. The Court finds no justification for treating the government differently from any other person who mistakenly overpays money. Equity does not permit the person to retain funds to which she has no entitlement simply because the person who paid the funds made a mistake in doing so. The Court emphatically rejects the 'finders keepers, losers weepers' philosophy which plaintiff improperly characterizes as a precept of justice and morality.

*Broeckert,* 751 F.Supp. at 1363. Except in the situations already provided for in the statute and regulations, this court agrees

---

**2.** In a footnote, the government claims that "the Acquiescence Ruling in *Groseclose* has been rescinded because the regulations have been amended to include circumstances such as those present in *Groseclose*". (Def.'s Mot. at 12.) It does appear that the regulations have incorporated the holding of *Groseclose* by stating that "[r]ecovery of an overpayment is *against equity and good conscience* if an individual. . . . (2) [w]as

living in a separate household from the overpaid person at the time of the overpayment and did not receive the overpayment." However, the fact that the regulations now *incorporate* the holding of *Groseclose* hardly supports the government's claim that the regulations have *rescinded Groseclose.* In any event, *Groseclose* is distinguishable from the case at bar, as explained above.

that an overpayment of benefits must be repaid.

### Conclusion

For the reasons set forth above, the court denies Banuelos' motion to reverse the decision of the Commissioner, grants the Commissioner's motion for summary judgment, and affirms the final decision of the Commissioner.